UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PATRICIA JOHNSON, FAUSTO CABRERA, VELLYN ANTONELLI, CARMEN FOX, MARK ANGELOPOULOUS, DIANE ANDERSON, JAMES COOLEY, AND MARGARET COOLEY, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAC HOME LOANS SERVICING, LP, a subsidiary of BANK OF AMERICA, N.A.,<br><br>Defendant. | Civil Action No. 10-10316-RWZ<br><br>Leave to File Granted on 7/28/2010 |

**BAC HOME LOANS SERVICING, L.P.'S REPLY
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

BAC's Motion to Dismiss was, in the first instance, based on the argument that Plaintiffs cannot circumvent the bar to private lawsuits under the Home Affordable Modification Program ("HAMP") by couching their claims under HAMP in the language of state law.  In opposition, Plaintiffs argue, on the one hand, that the HAMP guidelines promulgated by the Treasury Department are irrelevant to their claims.  But, on the other hand, Plaintiffs rely on those very HAMP guidelines to determine the essential terms of their supposed contracts with BAC.  This only serves to underscore Defendants' point:  Plaintiffs' claims cannot be divorced from HAMP – they are fundamentally grounded in HAMP.  In order to receive a permanent modification under a HAMP trial period plan ("TPP"), a borrower must first actually *qualify* for that permanent modification under the HAMP guidelines, the terms of any such permanent modification cannot be determined unless and until the borrower qualifies, and even then, the terms will vary based on a variety of HAMP requirements.

Plaintiffs cannot use HAMP to provide the essential terms of their purported contract because there is no private right of action under HAMP.  But, even if this court looks to the HAMP guidelines as Plaintiffs suggest, the TPPs are impermissibly vague and lack the essential elements of an enforceable contract under Massachusetts law.  Nor does the Opposition point to any cognizable damages in the Amended Complaint, and Plaintiffs therefore have no basis for recovery under any claim.  And the Opposition's attempt to dispense with M.G.L. c. 93A's requirement that Plaintiffs send a proper demand letter prior to filing suit essentially seeks to write the demand requirement out of the statute.  The Amended Complaint must be dismissed.

I. *Plaintiffs Cannot Enforce the Trial Period Plans.*

As BAC set forth in its motion to dismiss, case law overwhelmingly holds that HAMP cannot be enforced by means of a private lawsuit – even through creative pleading and attempts

to dress-up HAMP allegations as state-law causes of action. *See* Memo. in Supp. of Mot. to Dismiss ("Motion") at 9-10 (citing cases); *see also Marks v. Bank of America, N.A.*, No. 03:10-cv-08039, 2010 WL 2572988, at *5-6 (D. Ariz. June 22, 2010) ("[P]laintiff is precluded from asserting a private cause of action under the HAMP, even disguised as a breach of contract claim . . . .").[1] Plaintiffs do not dispute this point. Rather, they claim that HAMP's requirements "do not form any part of the legal predicate for Plaintiffs' claims," and thus should not bear on the Court's analysis. Pls.' Opp. to Mot. to Dismiss ("Opp.") at 5. This backtracking is not only contrary to the very allegations in Plaintiffs' Amended Complaint, *see, e.g.*, Compl. ¶ 5 (alleging that "Defendant's actions thwart the purpose of HAMP"); *id.* ¶¶ 23-44 (alleging facts regarding the creation of and requirements under HAMP); *id* ¶ 42 & n.8 (referring to the detailed HAMP directives attached to the Complaint as providing the methodology for calculating modification terms), it is belied by Plaintiffs' Opposition itself, which concedes that it is necessary to look to HAMP in order to determine the critical terms each Plaintiffs' permanent modification might contain. Opp. at 4 (Plaintiffs expected their "payment terms [to be] determined according to HAMP"); Opp. at 6 (arguing that TPPs are specific enough to satisfy Massachusetts contract law, by merely looking "to the HAMP Program Documentation" to discern the terms of any permanent modification and stating that "terms of the promised permanent loan modification are to be determined based on HAMP rules, particularly the 'waterfall'").

---

[1] Indeed, in the six weeks since BAC filed its motion to dismiss, at least six federal courts have dismissed lawsuits attempting to state causes of action under, or otherwise enforce, HAMP. *See Adams v. U.S. Bank*, No. 10-10567, 2010 WL 2670702, *4 (E.D. Mich. July 1, 2010); *Hoffman v. Bank of America, N.A.*, No. C 10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010); *Zendejas v. GMAC Wholesale Mortgage Corp.*, No. 10-CV-00184, 2010 WL 2629899 (E.D. Cal. June 29, 2010); *Simmons v. Countrywide Home Loans, Inc.*, No. 09-cv-1245, 2010 WL 2635220 (S.D. Cal. June 29, 2010); *Simon v. Bank of America, N.A.*, No. 10-cv-00300, 2010 WL 2609436, *10 (D. Nev. June 23, 2010); *Marks v. Bank of America, N.A.*, No. 03:10-cv-08039, 2010 WL 2572988 (D. Ariz. June 22, 2010).

Because the Complaint and the Opposition make clear that the lawsuit is nothing less than an attempt to get around the lack of a private right of action under HAMP, the Complaint should be dismissed.

Even if Plaintiffs had a private right of action, their theory of liability must fail. The TPPs are not enforceable contracts because they fail to provide the essential terms of the permanent modifications, if any, that borrowers may receive. Plaintiffs' reliance on the HAMP program documentation for those terms cannot save their claims because, like the TPPs, the program documentation provides no clear answer as to the terms of the permanent modification, if any, that may result from the TPP.

Under the program documentation, the terms of any permanent modification depend upon numerous factors including, for instance, the borrower's income. *See generally* Compl., Ex. 2. Plaintiffs' theory that every borrower who makes three TPP payments *must* be given a permanent modification (which they apparently now concede is incorrect, *see* Opp. at 9 (borrowers who do not provide information or properly allow for verification of their income are not eligible "*by the express terms of the TTP itself*")) necessarily assumes that no borrower's income can change. But, in fact, a borrower's income, which must be verified during the pendency of a Trial Period Plan, can vary widely from a borrower's original representations. *See* Compl., Ex. 2 at 5-6. An income variance either up or down can effect eligibility by affecting which steps of the "waterfall" are applied, *see id.* at 8-10, or the outcome of the Net Present Value test, *see id.* at 4-5. A borrower whose verified income is higher than initially represented, for example (such as Plaintiff Cabrera), may be ineligible for a HAMP modification at all because his mortgage payment ratio may already be below 31%. *See id.* at 6 (borrower will only qualify for the HAMP if the verified income documentation confirms that the monthly mortgage payment ratio prior to

the modification is greater than 31%"). Monthly expenses (e.g., real estate taxes, car payments, credit card debt, other loan payments) can also change. *Id.* at 10-11. Moreover, if the borrower fails the Net Present Value test – in the application of which a participating servicer retains ample discretion – the servicer is not obligated to modify the loan at all. *Id.* at 4. Given these various hurdles, there can be little certainty as to what the terms of a permanent modification will be, or indeed, whether a permanent modification will even be granted, at the time a TPP is signed. Notably, Plaintiffs themselves, though asserting that the terms of the permanent modification can be easily determined, have not suggested what those terms would be for a *single* loan at issue in this case.

Faced with the lack of the basic terms of an enforceable contract in their TPPs, Plaintiffs turn to caselaw to support their position that the TPPs contain sufficient terms to be enforceable. None of the cases from which Plaintiffs have harvested quotations help them, however. In *Targus Group Int'l, Inc. v. Sherman*, 76 Mass. App. Ct. 421, 431 (2010), for example, the defendants contended that a term that the defendants would pay the plaintiff $500,000 within six months of settlement was too vague to enforce. The court rejected that argument, *see id.*, and rightfully so, as the agreement specified a sum certain and a date certain by which the critical obligations were to be performed. Far from setting forth the sums certain due from Plaintiffs, or the dates certain on which those sums were due, the TPPs fail to set forth any essential terms with specificity. *George W. Wilcox, Inc. v. Shell Eastern Petroleum Prods.*, 283 Mass. 383 (1933), also cited by Plaintiffs, in fact underscores the TPPs' insufficiency. There, the Supreme Judicial Court concluded that an agreement was unenforceable because it failed to set forth "essential terms" such as the price for certain products, what portion of certain costs the defendant was to pay, or the quantity of merchandise to be bought and sold. *See id.* at 388-91.

4

Like the supposed agreement in *George W. Wilcox*, the TPPs omit mention of such essential terms as the interest rates and monthly payments, the outstanding principal amount, whether and how much principal would be forgiven or be subject to forbearance, and the term of the loan. As Massachusetts courts have recognized, such terms are material to a loan agreement. *See, e.g.*, *Marine Midland Bank v. Herriott*, 10 Mass. App. Ct. 743, 744-45 (1980) (no enforceable loan agreement where "[s]ignificant provisions of the understanding about a new loan . . . e.g., the term of the loan, how it would be secured, the manner and timing of disbursements, events of default, and the manner and timing of interest payments" were not specified); *LaChance v. BayBank Norfolk*, No. 92-1088, 1994 WL 878761, *9 (Mass. Super. Ct. Nov. 2, 1994) (loan agreement unenforceable because "essential terms" such as "how the loan would be secured, the manner and timing of disbursements and interest payments, [or] the parties' obligations in the event of a default" were "incomplete and vague"). The omission of these terms from the TPPs renders them nothing more than impermissibly vague "agreements to agree," which are therefore unenforceable as a matter of law.[2]

## II.     *Plaintiffs Failed to Allege Cognizable Damages in the Complaint.*

For Plaintiffs to succeed on their claims in this case, they must have alleged facts showing how they were damaged as a result of BAC's conduct. *See, e.g.*, *City of Revere v. Boston/Logan*

---

[2] Because the TPPs are not enforceable contracts, they cannot be the basis for a duty of good faith and fair dealing claim. *See Christensen v. Kingston School Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) ("In order to demonstrate a claim for the breach of the covenant of good faith and fair dealing, the plaintiff must show that there existed an enforceable contract between the two parties."). Similarly, because the essential terms of the permanent modifications were undefined, Plaintiffs could not reasonably rely upon the TPPs, and their claim for promissory estoppel must also fail.

*Airport Assocs., LLC.*, 443 F. Supp. 2d 121, 126-27 (D. Mass. 2006) (rejecting breach of contract claim in the absence of legally cognizable damages); *Veranda Beach Club Ltd. Partnership v. Western Surety Co.*, 936 F.2d 1364, 1381 n.10 (1st Cir. 1991) (promissory estoppel claim under Massachusetts law requires damages). As BAC explained in its motion, Plaintiffs have failed to do so, and indeed *saved* money by participating in TPPs, money that they were able to use toward other obligations while remaining in their homes. Motion at 6-7. Faced with this undisputable fact, Plaintiffs cite to *Faulkner v. Onewest Bank*, No. 3:10-CV-12, 2010 WL 2472275, *8-9 (N.D.W.Va. June 16, 2010), for the proposition that they have sufficiently alleged damages. In that case, the modification agreement in question was actually *rescinded* entirely, causing the plaintiffs damages as a result, *see id.* – circumstances undeniably not present here, as BAC did not rescind the TPPs and has continued to permit each Plaintiff to live in her home while making reduced loan payments.

Plaintiffs also raise a new theory of damages, claiming that "[e]ach month that BAC fails to perform its obligations under the TPP Agreements, Plaintiffs accrue greater fees and charges, are forced further into delinquency on their mortgages, are in default for longer periods, and are at heightened risk at losing their homes to foreclosure." Opp. at 11-12; *see also id.* at 13, 17. Notably, these bald assertions are not followed by any citation to the Complaint – and with good reason, because there are no factual allegations in the Complaint to this effect. It is black-letter law that a complaint must be judged on its own allegations, and Plaintiffs cannot bootstrap in new allegations by way of an opposition to a motion to dismiss. *See Keane v. Navarro*, 345 F. Supp. 2d 9, 11 (D. Mass. 2004). As BAC explained in its motion, the Complaint fails to allege any cognizable harm as a result of BAC's conduct, and Plaintiffs' claims must accordingly be dismissed.

### III. *Plaintiffs Failed to Satisfy Chapter 93A's Demand Letter Requirement.*

In arguing that they satisfied M.G.L. c. 93A's pre-suit demand letter requirement, Plaintiffs claim any deficiency in their reliance on a letter sent by another individual – who has

6

never sought to assert her own c. 93A claim in this action – is a mere "technicality." Opp. at 18. But Plaintiffs' failure to send a demand letter is hardly a technicality. It undermines the very purposes of the demand letter requirement: "to promote negotiation and settlement of claims and to allow the potential defendant the chance to make a reasonable offer of settlement in order to limit the damages a potential plaintiff might recover." *Bassi v. Julian Crane & Equip. Corp.*, No. 02-0306, 2005 WL 3105676, *6 (Mass. Super. Oct. 26, 2005) (citing *Slaney v. Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975)).

The only factual circumstances and damages that BAC had the ability to evaluate based upon the demand letter in this case were those of Patricia Johnson – the only individual named in the letter. After BAC evaluated her claims, it made an offer of settlement, which Ms. Johnson accepted. Plaintiffs do not and cannot argue that if they had sent their own letters setting forth the claims now advanced in the Complaint, BAC would have ignored them or failed to make a reasonable offer of settlement. By making such an offer to Ms. Johnson, BAC has shown its willingness to do so. Requiring the named plaintiffs here to send their own demand letters prior to filing suit does not undermine Chapter 93A's goal of providing a remedy for aggrieved consumers. To the contrary, it *serves* Chapter 93A's interests. Rather than requiring those individuals to invoke the mechanism of the courts for their claims to be addressed, they need only send a letter to have their claims addressed.[3]

The circumstances attendant to the named plaintiffs in this case demonstrate why it would have been impracticable for BAC to offer relief to the entire (as yet uncertified) class, as

---

[3] Plaintiffs' argument that this would result in the "unnecessary filing of repetitious papers and motions," Opp. at 19-20 n.9, is without merit. No papers or motions would need to be "filed" – Plaintiffs would merely have to send a letter asserting a claim, as Chapter 93A contemplates. If such borrowers were to send their own letters explaining

7

Plaintiffs insist it was required to do. Plaintiffs Diane Anderson and Mark Angelopoulous allege in the Complaint that BAC told them that it required additional documentation before their application for a permanent modification could be processed. Compl. ¶¶ 139-40. In Plaintiffs' view, Anderson and Angelopoulous were "similarly situated" to Johnson, BAC was required to provide them with relief based on Johnson's letter, and based on that letter, they can now sue BAC on behalf of other, as yet unnamed borrowers.[4] But Plaintiffs do not dispute that BAC sent Anderson and Angelopoulous a permanent modification (the relief sought in the Complaint) *before* they were added to the case by way of the First Amended Complaint. See Motion at 7, n.5; Opp. at 3, n.2. As such, Anderson and Angelopoulous did not and cannot properly bring suit based on Johnson's letter.

The circumstances of the other named Plaintiffs similarly make this point. BAC informed Vellyn Antonelli *prior to* the filing of the Complaint that she was approved for a permanent modification. Compl. ¶ 106. Plaintiffs James and Margaret Cooley received their TPP modification from Wilshire Credit Corporation, and not from BAC. *Id.* ¶ 150. BAC, which did not become the servicer of the Cooleys' loan until March 1, 2010, had already advised the Cooleys that it required further paperwork from the prior servicer before it could determine whether Plaintiffs were eligible for a permanent modification. *Id.* ¶¶ 155, 158. Other Plaintiffs and putative class members (Fausto Cabrera, for example) may never qualify for a permanent

---

their circumstances, BAC could make an offer of settlement (if appropriate) tailored to those borrowers' circumstances, rather than being constrained to offering a one-size-fits-all settlement, as Plaintiffs envision.

[4]  It bears noting that under Plaintiffs' position, Johnson's letter means that everyone "defined" in the letter as "similarly situated" to Johnson has now satisfied Chapter 93A's demand requirement. When followed to its logical end, Plaintiffs' position means that Anderson and Angelopoulous could have filed suit in state court in Massachusetts asserting c. 93A claims premised on Ms. Johnson's letter. The Cooleys could have filed their own class action in federal court based upon that letter. And any other member of the public at large claiming to be a member of the class referenced in that letter could also rely upon it to satisfy the statutory prerequisite. This simply makes no sense in the context of Chapter 93A's requirements.

modification because their incomes are too high or for other reasons.  Though Plaintiffs assert that all of these named plaintiffs could serve as representatives of the supposed class referenced in Ms. Johnson's letter, given the differences in their factual circumstances, it is not clear how BAC could tender an offer of settlement to the class as a whole that would adequately address the facts of those plaintiffs' cases.

*Baldassari v. Public Finance Trust*, 369 Mass. 33 (1975), in which the court concluded that a plaintiff could file a 93A claim where a prospective defendant *did not* respond to another plaintiff's letter setting forth class allegations, is not to the contrary.  A key basis of the court's conclusion there was that "[i]f no reasonable tender of settlement is made in response to the first demand, further demands are not likely to serve any useful purpose and are not required." *Id.* at 42.  In this case, however, BAC's reasonable tender of settlement to Ms. Johnson demonstrates that further demands *would* likely serve a useful purpose in this case.  Moreover, the court in *Baldassari* made clear that its conclusion did not extend to cases like this one, cautioning that it was not addressing the "separate question" that would arise in a case where "the plaintiff who made the statutory demand were shown to have accepted a tender of settlement by the defendants" – the exact circumstances here. *Id.*

Requiring a plaintiff to actually comply with Chapter 93A's demand requirement does not, as Plaintiffs claim, "eviscerate Chapter 93A's class action component." Opp. at 19.  An aggrieved plaintiff could still bring suit on behalf of him- or herself and a class of similarly-situated individuals where – as in *Baldassari* – the prospective defendant does not make a reasonable offer of settlement in response to a demand letter.  But neither plaintiffs nor defendants would be well-served by requiring would-be defendants to make settlement offers to members of a putative class as a whole upon receipt of a demand letter.  To avoid c. 93A's

9

provisions for treble damages and attorneys' fees and costs, defendants would be forced to investigate and respond to vague class allegations brought on behalf of an indeterminate number of individuals – and to investigate the potential claims of all possible class members within a mere 30 days.  Any settlement offers made as a result would necessarily be equally vague and indeterminate, potentially offering only incomplete relief to absent class members, and exposing the defendant to claims that it did not make a good faith offer in response to the demand letter.[5] That having to send only one letter might be more convenient for Plaintiffs' counsel is not a reason to ignore the requirement for those who seek to represent a class.  This is not the purpose of c. 93A or the demand letter requirement, and Plaintiffs' failure to satisfy that requirement prior to filing suit should bar their recovery in this case.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in the Memorandum in Support of its Motion to Dismiss, BAC Home Loans Servicing, L.P. requests that this Court dismiss Plaintiffs' First Amended Class Action Complaint with prejudice.

---

[5]  As the Massachusetts Appeals Court recognized in *Richards v. Arteva Specialties S.A.R.L.*, 66 Mass. App. Ct. 726, 733 (2006), it is impracticable for a defendant to make a reasonable tender of settlement to an entire class of individuals at the demand letter stage because "both the size of the eventual plaintiff class (if ever certified) and the total extent of their eventually claimed damages [are] unknown and could not possibly be estimated by a prospective defendant receiving the letter without knowledge of the actual scope and extent of the injuries to be alleged."

Dated: July 28, 2010

Respectfully submitted,

BAC Home Loans Servicing, L.P.,

By its attorneys,

/s/ James W. McGarry
James W. McGarry (BBO No. 633726)
jmcgarry@goodwinprocter.com
Mark Tyler Knights (BBO No. 670991)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231

**CERTIFICATE OF SERVICE**

I, James W. McGarry, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 28, 2010.

/s/ James W. McGarry