## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **PATRICIA JOHNSON, FAUSTO CABRERA, VELLYN ANTONELLI, CARMEN FOX, MARK ANGELOPOULOS, DIANE ANDERSON JAMES COOLEY and MARGARET COOLEY, on behalf of themselves and all others similarly situated,** | ) ) ) ) ) ) ) ) ) | **C.A. NO. 10-10316** |
| **Plaintiffs,**<br>**vs.** | ) ) ) | |
| **BAC HOME LOANS SERVICING, L.P., a subsidiary of BANK OF AMERICA, N.A.** | ) ) ) | |
| **Defendant.** | ) ) ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION

### I.      Introduction

Plaintiffs, on behalf of themselves and all others similarly situated ("Plaintiffs") have moved simultaneously herewith for provisional class certification under Fed R. Civ. P. 23(a) and 23(b)(2).  This motion for early provisional certification is made to allow the Court to enter a classwide injunction on Plaintiffs' separately filed Motion for Preliminary Injunction to Prevent Foreclosures.  The requested injunction is necessary, as explained more fully in the memorandum supporting that motion ("Prelim Inj. Mem."), to prevent ongoing inappropriate foreclosure activity by Defendant BAC Home Loans Servicing, L.P., a subsidiary of Bank of

America ("Defendant" or "BAC") against some members of the putative class in the underlying action.

Plaintiffs are homeowners who, like many Americans navigating the recent economic downturn, are in grave danger of losing their homes to foreclosure.  Seeking to save their homes, Plaintiffs entered into Trial Payment Plan ("TPP") Agreements with BAC under the U.S. Treasury's Home Affordable Modification Program ("HAMP").  Plaintiffs allege, *inter alia*, that BAC systematically and routinely breached these Agreements by failing to offer Home Affordable Modifications in circumstances where Plaintiffs fully complied with the TPP Agreements.  Plaintiffs also seek relief for BAC's routine breaches of the implied covenant of good faith and fair dealing, for promissory estoppel and for violation of MA Chapter 93A. Provisional class certification is especially appropriate here, where Plaintiffs have all signed essentially identical form contracts with the Defendant and been denied the fruits of that contract despite complying with its terms.  *See* Expert Report of Christopher Wyatt, attached to Declaration of Charles Delbaum (filed simultaneously with this motion) ("Wyatt Report") at 8.[1] BAC's violations of the law are identical with respect to each member of the proposed provisional class.  *Id.* at 16-18; Prelim. Inj. Mem. at 6.

Early provisional certification is sought in order to prevent the irreparable injury that would result from foreclosures on class members while this matter is pending.  Each illegal and unnecessary foreclosure would be a tragedy for the family affected.  As explained more fully in Plaintiffs' motion for a preliminary injunction, some class members are already facing the loss of their homes through foreclosure activity that violates contractual and other established legal rights.  Others have been left in an anxiety-producing state of uncertainty, with foreclosure

---

[1] Christopher Wyatt has over 20 years' experience in the mortgage loan origination and loan servicing industry, including extensive work in day-to-day mortgage loan servicing operations, compliance, and loan modifications, as well as Home Affordable Modification Program policy and procedures.

threatening on a daily basis.  Certification of a provisional class as a basis for a preliminary

injunction would preserve the *status quo* while the merits of this matter are fully evaluated.  For

the reasons discussed below, such a certification is appropriate because the proposed class meets

the requirements of Fed. R. Civ. P. 23(a) and (b)(2).

## II.    The Proposed Provisional Class Definition[2]

Plaintiffs propose to proceed on behalf of a provisional class for purposes of

obtaining injunctive relief for them. The provisional class consists of:

> All Massachusetts borrowers who entered into a written Trial Period Plan ("TPP")
> Agreement with BAC and made the payments identified in Section 2 of the TPP Agreement,
> other than borrowers to whom BAC sent either:
>
>> (a) a Home Affordable Modification Agreement prior to the date of class
>> certification, or
>> (b) a written denial of eligibility on or before the Modification Effective Date
>> identified in Section 2 of the borrower's TPP Agreement.

The individuals comprising this class are easily identifiable because BAC has been

required to maintain information on the number of Massachusetts homeowners eligible for

conversion pursuant to the mandatory Treasury Department HAMP reporting requirements.

Wyatt Report at 17.

This action clearly meets the requirements for class certification.  The proposed class is

defined by specific, objective, and verifiable criteria, and includes hundreds of Massachusetts

homeowners.  Plaintiffs have claims that are typical of those of the class, are adequate class

representatives, and have retained experienced and qualified class counsel.  All of the primary

issues of law and fact in the action are common to the class because they are based on BAC's

routine practice of failure to honor the promises it makes in each borrower's TPP Agreement.

The Defendant acted or refused to act on grounds generally applicable to the class, making

---

[2] Plaintiffs reserve the right to seek certification of a broader class later in the case for the purposes of damages and
other relief.

appropriate injunctive relief or corresponding declaratory relief with respect to the class as a whole.  Accordingly, the Court should certify the class as proposed, issue a preliminary injunction as requested in a motion being filed simultaneously herewith, and set the matter for further briefing and hearing on class notice procedures.[3]

### III.    Facts

BAC is the servicer of the mortgage loans of hundreds of class members, including all the named plaintiffs, Patricia Johnson, Fausto Cabrera, Vellyn Antonelli, Carmen Fox, Mark Angelopoulos, Diane Anderson, and James and Margaret Cooley,[4] as well as several other individuals who have contacted plaintiffs' counsel and whose declarations demonstrating their membership in the class are being filed simultaneously herewith.[5]  On default or imminent risk of default and seeking to save their homes, each of these homeowners applied for Home Affordable Modifications through BAC.  First Amended  Complaint (hereinafter "FAC") at ¶¶ 51, 75, 96, 117, 131; Fox Aff. at ¶7; Marino Aff. at ¶ 6; Tirrell Aff. at ¶ 6; Ingham/Murphy Aff. at ¶ 7; Ayers Decl. at ¶ 4 (attached as Exhibits 2-6 to the Declaration of Charles Delbaum). Each plaintiff was determined by BAC to be eligible for such a modification through a process that included a positive NPV test,[6] and each was offered TPP Agreements.  *Id.* at 53, 76, 97, 118, 132; Fox Aff. at ¶ 10; Marino Aff. at ¶ 7; Tirrell Aff. at ¶ 7; Ingham/Murphy Aff. at ¶ 8; Ayers Decl. at ¶ 5;  Wyatt Report at 5, 7-8. These borrowers executed and returned to BAC their TPP Agreements, and complied with its terms.  *Id.* at 56-58, 77, 98, 103, 121, 133, 137;  Fox Aff. at ¶ ¶12-13; Marino Aff. at ¶¶ 8,12; Tirrell Aff. at ¶ 8,12;Ingham/Murphy Aff. at ¶¶ 9, 14; Ayers

---

[3] Additional proceedings on final class certification would also follow on a schedule ordered by the Court.
[4] Plaintiff Patricia Johnson has settled her claims against defendant.
[5] These include Denis Ingham and Eleanor Murphy, a married couple, Kimberly and Noel Ayers, also a married couple, Brian Tirrell, and Frederic Marino.
[6] The NPV test is explained in Plaintiffs' Opposition to the Motion to Dismiss of BAC [Docket No. 14] ("Opp. Mem.") at 2 & n.3, 11.

Decl. at ¶¶ 6-9. Despite the fact that these Agreements all explicitly provide that time is of the essence, BAC failed to honor its promise to provide a Home Affordable Modification on the Modification Effective Dates specified in Section 2 of each borrower's TPP Agreement as "the first day of the month following the month in which the last Trial Period Payment is due."  See Exhibit 7, 9, 10, 11 and 12 to the FAC.

Not only did BAC fail to provide Home Affordable Modifications to class members, it failed to notify them of any decision – positive or negative – by the Modification Effective Date. FAC ¶¶ 61,82, 108, 124, and 142; Fox Aff. at ¶19; Marino Aff. at ¶¶14-16; Tirrell Aff. at ¶¶12-13; Ingham/Murphy Aff. at ¶¶14-18; Ayers Decl. at ¶ 11. Instead of providing borrowers with timely written determinations as to their eligibility status, BAC sent redundant, ambiguous and threatening letters for documents that BAC already had in its possession, or never responded to borrowers' inquiries.  Many of them, including Plaintiffs Cabrera, Antonelli and Fox, as well as declarants Marino, Ingham/Murphy, Tirrell and the Ayers, received foreclosure notices or threats. *See, e.g.,* FAC at ¶¶84-88, 104, and122; Fox Aff. at ¶20; Marino Aff. at ¶29; Tirrell Aff. at ¶23; Ingham/Murphy Aff. at ¶25; Ayers Decl. at ¶14.

The experiences of named plaintiffs and these other individuals are typical of those of BAC customers who entered into TPP Agreements.  Wyatt Report.at 16.  In part, this is because BAC failed to sufficiently train its staff, streamline underwriting processes and procedures, and enhance document collection and tracking capabilities.  *Id.* at 15-16   BAC's inadequate standards, staffing and policies led to its failure to offer timely Home Affordable Modifications to eligible borrowers following their compliance with TPP Agreements, and its repeatedly requesting that homeowners resubmit updated income documentation.  *Id*. at 16.

5

BAC's failure to live up to its end of the TPP Agreement has been routine and pervasive. *Id.;* FAC ¶45. BAC has one of the worst conversion rates of any HAMP participating servicer, converting only 25 percent of its borrowers in trial periods into permanent loan modifications by the end of the three-month period. Wyatt Report at 16. Plaintiffs' expert has estimated, based on publicly available data, that at least 220 Massachusetts borrowers had TPP Agreements with BAC that were not timely converted into permanent loan modifications. Wyatt Report at 17. BAC itself is easily able to access information to determine the number of eligible Massachusetts homeowners that have complied with their obligations under their TPP Agreements but not gotten HAMP modifications. *Id.*

Plaintiffs have been injured by this conduct and are threatened with further irreparable injury, as explained in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction being filed simultaneously herewith. BAC's failure to provide borrowers with timely permanent modifications or eligibility determinations has caused the proposed class representatives and others in the putative class to be subjected to unnecessary and improper collection calls and foreclosure activities, default and foreclosure-related fees and costs resulting in increased balance on their mortgage loans, significant stress and anxiety particularly from the possibility of foreclosure, and the loss of opportunities to pursue other loss mitigation strategies. Wyatt Report at 17-18; FAC ¶¶ 90-91, 104, 109-10, 143; Fox Aff. at ¶¶20-29; Marino Aff. at ¶¶22, 29, 31; Tirrell Aff. at ¶¶23-26; Ingham/Murphy Aff. at ¶¶20, 26-28, 30-33; Ayers Decl. at ¶15.

### IV.   Applicable Law

A.   *Breach of Contract*

Under Massachusetts law, an enforceable contract exists where there is an offer, acceptance, and an exchange of consideration or meeting of the minds. *Vadnais v. NSK Steering*

*Sys. Am., Inc.*, 675 F. Supp. 2d 205, 207 (D. Mass. 2009).  The standard TPP Agreement

tendered by BAC and accepted by each class member is such a valid enforceable contract.

Examples are attached to the FAC as FAC, Exhibits 9, 10, 11. In each of these standard

Agreements, Plaintiffs and other class members promised to perform all of the obligations BAC

required, including: (1) to make three timely monthly payments in an amount BAC determined,

(2) to provide the information BAC required, *id.* at 2; and (3) to do so in a truthful and accurate

manner throughout the process.  *Id.*  In exchange, BAC promised in each and every TPP to

provide borrowers with Home Affordable Modification Agreements, effective "the first day of

the month following the month in which the last Trial Period Payment is due." *Id.* at 1, 2.

Despite plaintiffs' compliance with their TPP Agreements, BAC violated its contracts by not

providing Plaintiffs with timely Home Affordable Modifications or written denials of their

eligibility.  The named plaintiffs and members of the provisional class are threatened with

immediate and irreparable harm from Defendant's breach.

> B.     *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Defendant is obligated by contract and common law to act in good faith and to deal fairly

with each borrower.  The "essential inquiry" when determining whether a party to a contract has

breached the covenant of good faith and fair dealing is to consider whether "the challenged

conduct conformed to the parties' reasonable understanding of performance obligations, as

reflected in the overall spirit of the bargain." *Speakman v. Allmerica Financial Life Ins.*, 367 F.

Supp. 2d 122, 132 (D. Mass. 2005).  Defendant routinely failed to perform loan servicing

functions consistent with its responsibilities to Plaintiffs, failed to properly supervise its agents

and employees, routinely demanded information it had already received, made inaccurate

calculations and determinations of Plaintiffs' eligibility for HAMP, failed to follow through on

written and implied promises, failed to follow through on contractual obligations, failed to

provide explanations as to Plaintiffs' eligibility for permanent loan modifications, and failed to

provide permanent Home Affordable Modifications to qualified Plaintiffs. FAC ¶ 45; Wyatt

Report at 16-18.  As a result of this failure to act in good faith and the absence of fair dealing,

Defendant caused Plaintiffs harm and threatens to cause many class members irreparable injury

through loss of their homes.

       C.      *Promissory Estoppel*

In Massachusetts, for a claim of promissory estoppel to be successful, there must be 1) a

representation or conduct amounting to a representation intended to induce a course of conduct

on the part of the person to whom the representation is made; 2) an act or omission resulting

from the representation by the person to whom it was made; and 3) detriment to such person as a

result of the act or omission. *See e.g. Turnpike Motors, Inc. v. Newbury Group, Inc.*, 413 Mass.

119, 123 (1992).  By making all of the payments and otherwise complying with their TPP

Agreements, Plaintiffs relied on BAC's promise to permanently modify their loans to their

detriment- they spent money that they could have reserved for other uses, such as payment to a

bankruptcy attorney to avoid foreclosure or a down payment for a rental unit if they are unable to

avoid foreclosure.  The TPP Agreement should, therefore, be equitably enforced under the

promissory estoppel theory.

       D.      *Violations of Chapter 93A*

Chapter 93A generally prohibits businesses from engaging in unfair and deceptive acts

and practices. *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 57 (1st Cir. 2007). "In determining

whether an act or practice is unfair, as opposed to deceptive, [courts] must evaluate the equities

between the parties. . . . What a defendant knew or should have known may be relevant in

determining unfairness. . . . Similarly, a plaintiff's conduct, his knowledge, and what he

reasonably should have known may be factors in determining whether an act or practice is

unfair." *Swanson v. Bankers Life Co*., 389 Mass. 345, 349 (1983).  Further, conduct may be

found to be deceptive for the purposes of G.L. c. 93A, if it reasonably can be found to have

caused plaintiffs to act differently than they otherwise would have acted. *Grossman v.*

*Waltham Chem. Co.*, 14 Mass. App. Ct. 932, 933 (1982).

BAC engaged in unfair and deceptive conduct in a number of ways, including those

mentioned above as evidence of a lack of good faith and fair dealing such as not adequately

staffing for the HAMP program, demanding information it already had in its possession, and also

by failing to offer Plaintiffs and the class Home Affordable Modifications when they complied

with their TPP Agreements. BAC's practices resulted in otherwise avoidable losses of homes to

foreclosure; less favorable loan modifications; increased fees and other costs to avoid or attempt

to avoid foreclosure; loss of savings in fruitless attempts to secure loan modifications; loss of

opportunities to pursue other refinancing or loss mitigation strategies; and significant stress and

emotional distress.  Wyatt Report at 17-18. Plaintiffs certainly took actions they would not

otherwise have taken, including pursuing HAMP as a solution to their default, were it not for

BAC's deceptive conduct.

Furthermore, BAC violated specific regulations promulgated by the Attorney General

under G.L. c 93A.  FAC ¶ 165.  BAC's violations include, *inter alia*, actions in contravention of

940 C.M.R. § 25.03, because it offers foreclosure-related services within the meaning of 940

C.M.R. § 25.01 without adequately describing the services offered.

**V.      The Class Should Be Provisionally Certified**

As noted above, the class for which plaintiffs seek provisional certification for injunctive relief consists of:

All Massachusetts borrowers who entered into a written Trial Period Plan ("TPP") Agreement with BAC and made the payments identified in Section 2 of the TPP Agreement, other than borrowers to whom BAC sent either:

(a) a Home Affordable Modification Agreement prior to the date of class certification, or
(b) a written denial of eligibility on or before the Modification Effective Date identified in Section 2 of the borrower's TPP Agreement.

A.     *Early Provisional Class Certification is Appropriate Here*

In determining whether a class should be certified, the merits of the case are not to be examined and substantive allegations of the complaint are to be taken as true. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974); *Burstein v. Applied Extrusion Technologies, Inc.*, 153 F.R.D. 488, 489 (D. Mass 1994) ("where the issue is class certification, the Court may not intrude into the merits of a case").  Class certification requires an inquiry into whether the requirements of Rule 23 are met rather than whether the plaintiffs have stated a cause of action or will prevail on the merits.  *Eisen*, at 178.  District courts have broad discretion when determining whether to certify a class.  *Priest v. Zayre Corp.*, 118 F.R.D. 552, 553 (D. Mass. 1998).

Provisional class certification may be granted to ensure compliance with court orders, including injunctions.  4 Newberg on Class Actions § 7.33.  Therefore, "for the purposes of a hearing on preliminary injunctive relief class certification may be provisional." *Heights Community Congress v. Rosenblatt Realty, Inc.*, 73 F.R.D. 1, 2 (N.D. Ohio 1975) (class provisionally certified in civil rights case for purpose of hearing on injunctive relief); *see also*

*Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997) (certifying a provisional class and granting Plaintiffs' motion for temporary retraining order).

   B.   *The Class Meets All Requirements Of Rule 23(a)*

This class indisputably meets the four prerequisites of Rule 23(a) necessary to class certification: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a).

   1.  *Numerosity*

Rule 23(a)(1) requires that the "class [be] so numerous the joinder of all members is impracticable." The standard of impracticability does not mean "impossibility" but only difficulty or inconvenience of joining all members of the class. *Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1998). The issue is not the numerical size of the class, but, as explicitly stated in Rule 23(a)(1), that joinder is impracticable. *Hatisberry v. Lee*, 311 U.S. 32, 41 (1941). The exact number of class members need not be predetermined to satisfy the numerosity requirement, rather an undisputed estimate of the class size may be used for the numerosity inquiry. *Priest,* at 554.

Although at this stage it is impossible to know the precise number of class members, it is possible to estimate that there are at least 220 affected class members in Massachusetts. This is based on extrapolations of the May 2010 Servicer Performance Report, including the 25 percent of homeowners in TPP Agreements that BAC has previously converted to permanent loan modifications, and the application of a national average of homeowners who are in active trial periods to Massachusetts. Wyatt Report at 17. While there are undoubtedly many more class members than those estimated, a class of this size is more than sufficient to satisfy numerosity. *See* Berenson, 100 F.R.D. at 470; *Holton v. L.F. Rothschild,* 118 F.R.D. 280, 282 (D. Mass

1987); *Brophy v. School Comm. Of Worcester*, 6 Mass. App. Ct. 731, 383 N.E. 2d 521 (1978).

This number of class members demonstrates that joinder would be a logistical nightmare.

> 2.     *Commonality*

Rule 23(a)(2) imposes a commonality requirement that the action contains questions of

law or fact that are common to the class.  Fed. R. Civ. P. 23(a)(2).  To satisfy the commonality

requirement, the claims need not be identical, but only "common, and not in conflict."

*Guckenberger v. Boston University*, 957 F. Supp. 306, 325 (D. Mass. 1997).  *See also In re*

*General Motors Trucks*, 55 F.3d 768, 817 (3rd Cir. 1995).  The commonality requirement is a

"low hurdle" easily surmounted.  *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185

(N.D. Ill. 1992).  "[T]he rule requires only that resolution of the common questions affect all or a

substantial number of the class members."  *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472

(5th Cir. 1986).  Standardized, pattern practices, such as the use of the form TPP Agreement at

issue here,  satisfy the commonality test.  *In re First Commodity Corp. of Boston Customer*

*Accounts Litig.*, 119 F.R.D. 301, 309-310 (D. Mass. 1987).

The questions of law in this litigation are identical among the class members, namely: the

nature, scope and operation of Defendant's obligations to Plaintiffs under TPP Agreements;

whether the TPP Agreement is a binding contract or otherwise legally obligates Defendant to

offer class members a permanent Home Affordable Modification; whether Defendant's failure to

provide Home Affordable Modifications effective "the first day of the month following the

month in which the last Trial Period Payment is due" or timely written denials as to borrowers'

eligibility in these circumstances amounts to a breach of contract and/or a breach of the covenant

of good faith and fair dealing; whether the Court can order Defendant to pay damages and what

the proper measure of damages is; and also whether the Court can enter injunctive relief.  All of

these claims are based on the same standardized pattern of practices.  BAC routinely failed to

honor its promise to provide Home Affordable Modifications to these borrowers on the

Modification Effective Dates specified in each borrower's TPP Agreement as a result of

inadequate staffing and procedures.  Wyatt Report at 15-18.

    *3.    Typicality*

    The third prerequisite to class certification is that "the claims or defenses of the

representative parties [be] typical of the claims or defenses of the class…" Fed. R. Civ. P.

23(a)(3).  To be typical within the meaning of the rule simply requires that the claims of the

named plaintiffs arise from the same type of conduct which give rise to the class members'

claims.  *Adair v. Sorenson*, 134 F.R.D. 13, 17 (D. Mass. 1991) ("*Adair*"), *quoting Tolan v.*

*Computervision Corp.*, 696 F. Supp. 771, 777 (D. Mass. 1998); *see also In re Terazosin*

*Hydrochloride Antritrust Litig.*, 220 F.R.D. 672, 686 (S. D. Fla. 2004).  To satisfy the typicality

requirement, "plaintiffs need not show substantial identity between their claims and those of

absent class members, but need only show that their claims arise from the same course of

conduct that gave rise to the claims of absent members."  *Randle v. Spectran*, 129 F.R.D. 386,

391 (D. Mass. 1988) *quoting*, *Priest*, at 555.  In *Berenson v. Faneuil Hall*, 100 F.R.D. 468 (D.

Mass. 1984) ("*Berenson*"), the Court adopted a definition of typicality:

> Typicality refers to the nature of the claim of the class representatives, and
> not to the specific facts from which the claim arose or relief is sought.
> The proper inquiry is whether other members of the class have the same or
> similar injury, whether the action is based on conduct, not special or
> unique to the named plaintiffs, and whether other class members have
> been injured by the same course of conduct.

*Berenson*, 100 F.R.D. at 470, *quoting Dura-Bilt Corp. v. BAC Manhattan Corp.*, 89 F.R.D. 87,

99 (S.D.N.Y. 1981).  "Although [the plaintiffs] may not have suffered identical damages, that is

of little consequence to the typicality determination when the common issue of liability is shared." *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 28 (D.D.C. 2001).

Here, the claims of all of the named plaintiffs arise from the same course of conduct and the same legal theories as the class of Massachusetts borrowers they seek to represent. After determining them to be initially eligible for Home Affordable Modifications, BAC entered into identical TPP Agreements with such borrowers. *See* Sections II and III, *supra*. Like the putative class representatives, these borrowers complied in full with their TPP Agreements but did not receive Home Affordable Modifications by the effective date specified in their contracts even though those contracts explicitly provide that time is of the essence. *Id.* BAC similarly failed to answer these borrowers' inquiries as to the status of their loan modifications, made redundant, ambiguous, and threatening requests for documents, and failed to provide them with timely Home Affordable Modifications or written denials as to their eligibility for a modification. *Id.* The Plaintiffs were thus all subject to the same conduct, arising from nearly identical circumstances.

The legal theories on which Plaintiffs base their claims go beyond being merely similar to those of the putative class members, they are identical. These claims include, *inter alia,* that BAC's failure to honor its agreements with borrowers and convert TPP agreements into permanent loan modifications breached an enforceable contract, breached the implied covenant of good faith and fair dealing, ran afoul of the doctrine of promissory estoppel, and violated G.L. c. 93A.

For the purposes of provisional class certification, Carmen Fox's claims and factual circumstances are certainly typical. She complied in all respects with her obligations under the TPP Agreement, but nevertheless BAC has instituted foreclosure proceedings against her

property and had sales scheduled several times, most recently in August, 2010.  Fox Decl. at ¶ 26.

### 4.      Adequacy Of Representation

The final requirement under Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This element is generally characterized as an inquiry into whether the attorneys together with the named plaintiffs will act diligently on behalf of the class.  *Amchem Products v. Windsor*, 521 U.S. 591, 626, n. 23 (1997).  Such diligence involves two factors: (1) the plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) the plaintiff must vigorously pursue the litigation and must not have interests antagonistic to those of the class.  *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

The named plaintiffs are willing and able to serve as class representatives.  Each of them has sought counsel to redress the wrongs they challenge and have retained counsel experienced in class action litigation involving violations of consumer protection laws.  Each of them has made themselves available throughout the initial stages of this litigation to assist with development of the factual record.  Each of them has likewise stayed abreast of developments in the case.  The named plaintiffs have met with counsel on multiple occasions and have provided all necessary documentation requested.  The second relevant consideration under Rule 23(a)(4) is whether the interests of the named Plaintiffs are coincident with the general interests of the class.  In this case, Plaintiffs and class members have entered into the same form TPP Agreements with BAC, and all of the class members have been denied their right to a timely permanent loan modification or to a written denial explaining their eligibility for a permanent loan modification

by BAC.  Given the significant similarity of claims between Plaintiffs and the class members,

there is no potential for conflicting interests and there are no competing or inconsistent claims.

Further, Plaintiffs' counsel have extensive experience in the successful prosecution of

this type of class action, and are capable of vigorously prosecuting this action.  *See* Fed. R. Civ.

P. 23(g).  The National Consumer Law Center ("NCLC"), Neighborhood Legal Services

("NLS") and Roddy Klein and Ryan ("RKR") each have extensive expertise in the issues raised

in this matter.  *See* Declaration of Gary Klein ("Klein Declaration"), filed simultaneously

herewith.  As evidenced by the exhibits to the Klein Declaration, Plaintiffs' counsel is uniquely

qualified to serve the provisional class proposed here.  NCLC has been referred to by this Court

as the "leading non-profit low-income consumer advocacy organization in the country."  *See* Ex.

2 to Klein Decl. (Statement of Experience of Stuart Rossman) at ¶ 10.  NLS is a legal aid

organization providing free legal services to low-income residents in certain areas of

Massachusetts and has experience in class cases.  *See* Ex. 3 to Klein Decl. at ¶¶ 3, 7-8.  RKR

specializes in the representation of consumers in individual and class action cases against

mortgage lenders and other financial services companies.  Among many other matters, RKR has

been appointed co-lead counsel in three major Multidistrict Litigation proceedings addressing

mortgage lending abuses and mortgage lending discrimination.  *See* Ex. 1 to Klein Declaration at

1-2.[7]

---

[7] These qualifications support appointment of RKR, NCLC and NLS as interim class counsel as well.  Rule 23(g)(3) provides that "[t]he court may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action."  Such orders are common and are encouraged in complex class actions. *See Manual for Complex Litigation, Fourth* §10.22 (2004) (recommending coordination of counsel early in complex litigation). The considerations set out in Rule 23(g)(1)(C), which govern appointment of class counsel once a class is certified, have been held to apply equally to the designation of interim class counsel before certification. *Hill v. The Tribune Co.,* Nos. 05-C-2602 etc., 2005 WL 3299144, at *3-4 (N.D. Ill. Oct. 13, 2005).  These considerations include work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law, and the resources counsel will commit to representing the class.  As evidenced by the Klein Declaration and its exhibits and the prior history of this matter, Plaintiffs' counsel meet this standard.

C.      *The Class Meets All Requirements of Rule 23(b)(2)*

In addition to meeting the Rule 23(a) requirements, courts will maintain a class action if it also satisfies the requirements of one of the subsections of Rule 23(b). *Adair,* 134 F.R.D. at 17.  For purposes of this Motion for Provisional Certification, the Court need only consider Rule 23(b)(2), which requires a showing that the defendant "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) ("*Baby Neal*") ("When a suit seeks to define the relationship between the defendant(s) and the world at large…(b)(2) certification is appropriate.") (internal citation and quotation omitted).  Acting on grounds generally applicable to all class members does not mean that the conduct need be directed at all class members or that it even damaged all class members.  *Baby Neal*, 43 F.3d at 58.  *See also Griffin v. Burns*, 570 F.2d 1065, 1073 (1st Cir. 1978) ("[N]ot all class members need be aggrieved by or desire to challenge defendant's conduct in order for some to seek relief under (b)(2).") (citations and quotations omitted).

Courts have found that this requirement is almost automatically satisfied in actions seeking injunctive relief, where the relief sought will benefit the entire class.  *Baby Neal*, 43 F.3d at 58-59, *citing* 1 H. Newberg & A. Conte, Newberg on Class Actions § 4.11, at 4-39 (1992).  As noted above, this motion for provisional class certification is made in concert with Plaintiffs' motion for a preliminary injunction.

In this case, Plaintiffs all entered into TPP Agreements with BAC.  Plaintiffs allege that BAC breached these agreements and otherwise violated class members rights related to the contracts BAC offered them under the HAMP program in the same way as to each class member.

17

Final relief of an injunctive nature would benefit the class as a whole.  Class members will be able to make informed decisions about whether they have grounds to contest denials, cure their delinquencies, pay their mortgage loans, eliminate liability for additional fees and charges, and avoid foreclosure.  BAC has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VI.    Conclusion

The proposed class meets the requirements of Rule 23(a) and (b)(2).  For the foregoing reasons, Plaintiffs respectfully request that the Court provisionally certify this action as a class action for the purposes of entering preliminary injunctive relief.

Respectfully Submitted,

Patricia Johnson, Fausto Cabrera, Vellyn Antonelli, Carmen Fox, Mark Angelopoulos, Diane Anderson, and James and Margaret Cooley individually and on behalf of all others similarly situated,

By their attorneys,

*/s/ Charles Delbaum*
Stuart Rossman (BBO 430640)
Charles Delbaum (BBO 543225)
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th floor
Boston, MA 02110
Tel: (617) 542-8010
Fax: (617) 542-8028

Gary Klein (BBO 560769)
Shennan Kavanagh (BBO 655174)
Kevin Costello (BBO 669100)
RODDY KLEIN & RYAN
727 Atlantic Avenue
Boston, MA  02111-2810
Tel:  (617) 357-5500
Fax:  (617) 357-5030

18

Michael Raabe (BBO 546107)
NEIGHBORHOOD LEGAL SERVICES
170 Common Street, Suite 300
Lawrence, MA 01840
Tel:  (978) 686-6900
Fax:  (978) 685-2933

Dated: September 7, 2010

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) and paper copies will be sent to those indicated as non-registered participants on the date of filing.

*/s/ Charles Delbaum*
**Charles Delbaum**