UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

PATRICIA JOHNSON, FAUSTO CABRERA,
VELLYN ANTONELLI, CARMEN FOX,
MARK ANGELOPOULOS, DIANE
ANDERSON, JAMES COOLEY, AND
MARGARET COOLEY, on behalf of herself
and all others similarly situated,

Plaintiffs,

v.

BAC HOME LOANS SERVICING, LP, a
subsidiary of BANK OF AMERICA, N.A.,

Defendant.

Civil Action No. 10-10316 - RWZ

---

**DEFENDANT BAC HOME LOANS SERVICING, L.P.'S
OPPOSITION TO MOTION FOR PROVISIONAL CLASS CERTIFICATION**

# Table of Contents

**Page**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND .....................................................................................................3
       A.    The Home Affordable Modification Program. ......................................4
       B.    The Complaint's Allegations and The HAMP Trial Period Plans..........7

III.   GOVERNING RULE 23 STANDARDS ...............................................................9

IV.    ARGUMENT.........................................................................................................10
       A.    Plaintiffs' Attempted Piecemeal Certification Is Improper. ...................10
             1.    Rule 23 Does Not Permit Certification of a "Provisional" Class. ........... 10
             2.    Certification Under Rule 23(b)(2) Is Reserved For "Final
                   Injunctive Relief."................................................................ 12
             3.    The Factual Record Is Insufficient to Permit Certification As No
                   Discovery Has Occurred. ..................................................... 13
       B.    No Class Can Be Certified Here, Provisional Or Otherwise. ................16
             1.    The Requirements For Class Certification Under Rule 23(b)(2) Are
                   Not Met Even If the Inadequate Record is Overlooked........................... 16
                   a.    Plaintiffs Present No Evidence that BAC Acted on Grounds
                         Generally Applicable to the Class................................... 18
                   b.    Plaintiffs' "Expert" Declaration Does Not Provide a Basis
                         for Certification..................................................... 22
                   c.    The Complaint Seeks Compensatory and Punitive
                         Damages, Thus Making Rule 23(b)(2) Certification
                         Improper............................................................. 24
             2.    Plaintiffs' Claims Are Not Typical of the Class and Plaintiffs Are
                   Not Adequate Representatives.................................................. 25
                   a.    The Motion Must Be Denied Because There Are No Facts
                         Submitted by Any Plaintiff Other than Fox. ...................... 25
                   b.    Plaintiffs Cannot Seek the Injunctive Relief Demanded. ............ 25
                   c.    Plaintiffs Fail the Typicality Requirement...................... 26
             3.    Defenses To Plaintiffs' Claims for Injunctive Relief, and Other
                   Considerations, Should Prevent Any Certification.................... 28
       C.    Plaintiffs Seek An Inappropriate Fail-Safe Class. ..................................29

V.     CONCLUSION......................................................................................................30

## I.   INTRODUCTION

This lawsuit is one of a series of identical actions brought by the same lawyers in this District.  The essential claim of these suits is that BAC Home Loans Servicing LP ("BAC"), as well as virtually every major mortgage loan servicer in the country, has failed to provide defaulted borrowers with permanent loan modifications under the federal government's Home Affordable Modification Program ("HAMP").  Because the law is now well established that borrowers have no private right of action under HAMP, the Complaint attempts to assert HAMP compliance as a breach of contract claim.  The basis for the breach of contract claim is a Trial Period Plan ("TPP") that the Treasury Department requires participating servicers to provide borrowers who seek to enroll in the program and who make certain representations regarding their income.  Under the TPP, borrowers can make temporary reduced payments while they are being evaluated for a permanent modification.  The form, which each plaintiff contends in the complaint is a binding contract between him or her and BAC, was mandated by Treasury under its substantial guidance to participating loan servicers.  The TPP, which has since been replaced by Treasury, required, among other things, each participating borrower to provide specific documentation so that their eligibility for a permanent modification may be determined.  It also required each borrower to make a series of representations, the falsity of any one of which means no permanent modification may be had.

By their motion, plaintiffs seek to "provisionally" certify a class of borrowers who may, or may not, have complied with their obligations under the TPP.  That is, plaintiffs seek a "provisional" class of Massachusetts borrowers who entered a TPP, made all their payments under the TPP, and either did not receive a permanent HAMP modification or were not informed of their denial by a date of plaintiffs' choosing – not a date by which the TPP required a denial

notice.  Plaintiffs then separately ask the court to enter a preliminary injunction on behalf of the "provisional" class to halt all foreclosure activity.

The motion must be denied for several reasons.  It is procedurally improper in the first instance, as there is no such thing as  a "provisional" class under Rule 23.  The rule, its commentary, and Supreme Court precedent make clear that any motion for class certification must undergo the full "rigorous analysis" required by Rule 23.  There is no free pass for a plaintiff seeking a preliminary injunction on the ground that the court can look at the "broader" certification issues later and do the real analysis then.  Moreover, Rule 23(b)(2) is limited by its terms to "final" injunctive relief.  A preliminary injunction is, by definition, not final.  In addition, the motion cannot be granted because it is not supported by evidence.  No discovery has occurred, no facts have been developed, and plaintiffs support their motion with nothing more than one self-serving affidavit of a named plaintiff, and four additional affidavits of putative class members who, prior to plaintiffs' motion, had never appeared in any form in this case.  Unsurprisingly, there are problems with the representations made in each such submission, but BAC has not had an opportunity to explore those problems where no discovery has yet occurred.  Plaintiffs' remaining "support" is a facially improper and unsupported "expert" declaration by someone whose claim to fame is setting up the HAMP program of another loan servicer – a servicer that plaintiffs' counsel are also suing for failure to comply with HAMP through the very program their "expert" purports to have helped developed.

Beyond the procedural problems and lack of factual support to their motion, even BAC's preliminary factual inquiry makes clear plaintiffs simply cannot satisfy the requirements of Rule 23.  Rule 23(b)(2) cannot be satisfied because the fundamental factual inquiry for each borrower (Did they each qualify for HAMP in the first place?  Did each comply with his TPP obligations?

Did each class member send in the required documents?) necessarily precludes the conclusion that BAC acted in a way common to the class as a whole.  Several of the named plaintiffs were qualified for TPPs based on unverified income information, and when that income was verified, they simply did not qualify for HAMP.  Other borrowers did not comply with their TPP obligations.  Still others failed to submit all required documents.  Because each class member must prove the elements of his breach of contract claim (as well as the other, entirely derivative state law claims), individual issues will swallow up this case and destroy any theoretical cohesiveness among class members.  Plaintiffs also may not seek the injunctive relief at issue (none of them are in imminent danger of foreclosure), and thus by definition are not adequate class representatives and do not have claims typical of the class they seek to represent.  Myriad other reasons preclude the class sought here. The motion should be denied.

## II.     BACKGROUND

Although pending since February, this case is in the very early stages of litigation. Plaintiffs filed their First Amended Complaint on April 30, 2010, and BAC moved to dismiss it on June 14, 2010.  That motion is currently under submission.  To date, no discovery has taken place in this case.[1]

This is by no means the only attempt plaintiffs' counsel is making at enforcing HAMP against mortgage servicers.  They have filed at least 4 other cases against the nation's largest loan servicers, all of which make the identical claims as here.  Plaintiffs' counsel is pursuing the identical "provisional" class and injunctive relief against at least two other servicers.[2]

---

[1] On August 6, 2010, plaintiffs in an action pending in New Jersey filed a motion to transfer and consolidate related actions, including this case, before the Judicial Panel on Multidistrict Litigation (the "Motion to Transfer").  The Motion to Transfer was granted by the JPML on October 8, consolidating the remaining cases with this one for pretrial proceedings.

[2] *See Bosque v. Wells Fargo Bank, N.A.*, Civil Action No. 10-10311 (D. Mass., filed 2/23/2010); *Durmic v. J.P. Morgan Chase Bank, N.A.,* Civil Action No. 10-10380 (D. Mass., filed 3/3/2010); *Reyes v. IndyMac Mortgage*

3

### A.      The Home Affordable Modification Program.

In early 2009, the U.S. Treasury announced the Home Affordable Modification Program ("HAMP"), a national mortgage loan modification program intended to help 3 to 4 million at-risk homeowners avoid defaulting on their loans by reducing their monthly payments.  First Amended Class Action Complaint ("Compl.") [Doc. No. 5], Ex. 2 at 1 (HAMP Supplemental Directive 09-01).  Under the HAMP guidelines issued by Treasury, participating servicers must consider borrowers who meet certain criteria for mortgage loan modifications.  *Id.* at 2.  Among other things, a borrower's loan must be in danger or imminent danger of default and be secured by the borrower's primary residence.  *Id.* at 3.

Since their introduction, the HAMP program guidelines promulgated by Treasury have been in a constant state of flux.  Plaintiffs' putative expert, Christopher Wyatt, sets forth several of the more substantive changes to HAMP in the 10 pages of his declaration describing HAMP.  *See* Wyatt Report [Doc. 22-1] at 12-13.  Among the changes Wyatt identifies are changes to the documentation borrowers are required to submit and to the notices that servicers are required to send to borrowers.  *See id.*  However, those are hardly the only changes to HAMP.  In the year and a half that has passed since HAMP was announced, Treasury has issued over fifteen different supplemental directives, and multiple other documents, providing guidance on HAMP.[3] Moreover, servicers of loans that are owned or guaranteed by Fannie Mae or Freddie Mac ("GSE loans") must participate in the GSE versions of HAMP as to those loans.  Compl., Ex. 2 at 2. The guidelines developed by Fannie and Freddie for their respective versions of HAMP are not

---

*Services, F.S.B.*, Civil Action No. 10-10389 (D. Mass., filed 3/4/2010); *Belyea v. Litton Loan Servicing, LLP,* Civil Action No. 10-10931 (D. Mass., filed 6/4/2010).

[3] *See* Home Affordable Modification Program Servicer Documents, *at* https://www.hmpadmin.com/portal/programs/hamp/servicer.html (providing links to HAMP supplemental directives and other documentation for non-GSE loans) (last visited Oct. 13, 2010).

identical to those issued by the Treasury, but differ in several key respects.[4]  As a result of the

rapid deployment of HAMP and its constant changes, HAMP implementation has been an

incredibly complicated undertaking for BAC and other loan servicers.  *See* Declaration of Laurie

A. Maggiano ("Treasury Decl.") at ¶ 23, attached as Ex. A to Declaration of James W. McGarry

("McGarry Decl.").

Despite their differences, all three versions of the HAMP program share some common

features.  Under all three versions of the program, a servicer, employing the borrower's

represented income information, will apply a series of steps (reducing the interest rate, extending

the term and forbearing principal) (i.e., the "waterfall") in an effort to adjust the borrower's

monthly mortgage-related payments to 31% of a borrower's total pre-tax monthly income.

Compl., Ex. 2 at 8-10; Fannie Mae Announcement 09-05R at 10-11, *available at*

http://www.efanniemae.com/sf/guides/ssg/annltrs/pdf/2009/0905.pdf (last visited Oct. 13, 2010);

Freddie Mac Single Family Seller/Servicer Guide, Vol. II, Ch. C65.6(b), *available at*

http://www.freddiemac.com/sell/guide/ (last visited Oct. 13, 2010).  If the servicer, employing

these steps, is able to reduce the borrower's payment to 31% of his or her gross monthly income,

the servicer may then offer the borrower a HAMP TPP.

A HAMP TPP lasts at least three months.[5]  During the trial period, the borrower must

make regular timely payments in the reduced amount set forth in his or her TPP.  In addition,

---

[4] *Compare generally* Compl., Ex. 2 (HAMP Supplemental Directive 09-01, announcing HAMP) *with* Fannie Mae Announcement 09-05R, *available at* http://www.efanniemae.com/sf/guides/ssg/annltrs/pdf/2009/0905.pdf (last visited Oct. 13, 2010) (announcing Fannie version of HAMP) *and* Freddie Mac Single Family Seller/Servicer Guide, Vol. II, Chapter C65, *available at* http://www.freddiemac.com/sell/guide/ (last visited Oct. 13, 2010) (setting forth guidelines for Freddie version of HAMP).

[5] Under the Treasury HAMP guidelines, a TPP typically lasts three months, but may be longer "if necessary to comply with applicable contractual obligations."  Compl., Ex. 2 at 17.  Under Fannie Mae's HAMP guidelines, a TPP may be four months long if the borrower is not in default at the time s/he seeks a HAMP modification.  Fannie Mae Announcement 09-05R at 20.  Under Freddie Mac's HAMP guidelines, a TPP may also be longer than three months under certain circumstances.  Freddie Mac Single Family Seller/Servicer Guide, Vol. II, Ch. C65.7.

during the period in which all named Plaintiffs in this action received their TPPs, servicers could place a borrower into a TPP under HAMP based *only* on the borrower's representation of that income, with no prior verification of income required. Compl., Ex. 2 at 5; Treasury Decl. ¶ 13 & n. 4. During the trial period, the servicer then collected documentation necessary to verify the amount of the borrower's income. *Id.* While this procedure permitted servicers to provide relief to potentially eligible borrowers quickly by doing away with extensive documentation requirements, it also sometimes resulted in borrowers being ineligible for HAMP when their representations as to their income were later tested with verifiable information. Compl., Ex. 2 at 6 (borrower only qualifies for HAMP if *verified* income shows payment ratio greater than 31%); 17-18 (borrower must meet all HAMP conditions to be placed in permanent modification). As a result, Treasury changed the initial eligibility requirements to require full documentation before a TPP, effective June 1, 2010. All named plaintiffs (and all 4 borrowers who submitted declarations with plaintiffs' Motions) were qualified under the pre-June 2010 regime, where TPPs were entered based on unverified income. Declaration of Keith Jones ("Jones Decl.") ¶¶ 8, 9, 16, 19, 30, 33.

Once the borrower's income has been verified, the servicer also subjects the loan to a Net Present Value ("NPV") test. Compl., Ex. 2 at 4-5; Fannie Mae Announcement 09-05R at 6-7; Freddie Mac Single Family Seller/Servicer Guide, Vol. II, Ch. C65.6(a). If the NPV test produces a "negative" result (meaning that losses from foreclosure are less than losses from modification), the servicer is not obligated to modify the loan. Under all three versions of HAMP, after receiving a TPP a borrower may receive a permanent HAMP modification only if he or she submits all the necessary documentation, is determined to be HAMP-eligible (including that all HAMP requirements continue to be met – *e.g.*, income is verified, NPV is positive, the

original mortgage payment exceeds 31% of pre-tax income, and the modified payment can be reduced to 31%), and makes timely payments.  Compl., Ex. 2 at 15, 18; Fannie Mae Announcement 09-05R at 17; Freddie Mac Single Family Seller/Servicer Guide, Vol. II, Ch. C65.7.

**B.      The Complaint's Allegations and The HAMP Trial Period Plans.**

In extending TPPs to borrowers, BAC was required to use the documentation promulgated by Treasury, Fannie Mae, and Freddie Mac.  Compl., Ex. 2 at 17.  Plaintiffs' theory of recovery is that once a TPP is extended to a borrower, the eligibility requirements of HAMP are no longer important.  They assert that as long as borrowers make the payments required under the TPP and submit the documentation requested by the servicer, they are automatically entitled to receive permanent modifications under HAMP.  Compl. ¶ 44.  Plaintiffs' argument is based on the following provision of the Treasury's TPP:

> "If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Servicer will provide me with a Home Affordable Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage."

Unsurprisingly, Plaintiffs' argument ignores the remainder of the TPP.

The language of the TPP sets forth the terms under which a borrower may receive a permanent loan modification under HAMP.  First and foremost, the borrower must *qualify* for a permanent modification.  Jones Decl., Ex. A at 2 (requiring the borrower to provide documentation "to permit verification of all my income . . . to determine *whether I qualify*" for a permanent modification).  The TPP on its face thus requires a HAMP eligibility determination before a final modification will be made.  This makes sense, of course, especially given that prior to June 2010, BAC gave TPPs to plaintiffs and borrowers based only on their representations as

to income.  Moreover, the TPP provides that a borrower's loan will not be modified unless the borrower meets "all of the conditions required for modification."  *Id.* at 3 (§ 2(G)).  In addition, Section 1 of the TPP requires that six specific representations made by the borrower "continue to be true in all material respects" in order for the borrower to receive a permanent modification. TPP at 1.  Each borrower must represent that:

- The borrower cannot afford his or her mortgage payments for the reasons set forth in his or her Hardship Affidavit;

- The borrower lives in the property as his or her principal residence, and the property has not been condemned;

- There has been no change in ownership of the property since the borrower signed the loan documents;

- The borrower has provided or will provide documentation for all income that s/he receives;

- All documents and information provided to the servicer are true and correct; and

- The borrower will obtain credit counseling if required by the servicer.

*Id.* at 1-2 (§ 1(A)-(F)).  In addition to the foregoing representations, in signing the TPP document the borrower represents "[t]hat all persons who signed the [mortgage and note] . . . have signed this plan, unless a borrower or co-borrower is deceased or the Servicer has waived this requirement in writing."  *Id.* at 3 (§ 4(A)).

 Once the plan has taken effect,[6] Section 2 of the Plan requires the borrower to make three or more payments in a set amount "[o]n or before" specified due dates.  *Id.* at 2 (§ 2).  The TPP states that "time is of the essence," and Section 2 further provides that the servicer's acceptance of payments during the TPP is "without prejudice to, and will not be deemed a

---

[6] The TPP "will not take effect unless and until both [the borrower] and the Servicer sign it and the Servicer provides [the borrower] with a copy of this Plan with the Servicer's signature."  Jones Decl., Ex. A at 1.

waiver of, the acceleration of the loan or foreclosure action and related activities . . . ."  *Id.* at 2 (§ 2(E)).

If the servicer does not provide the borrower with a fully executed copy of the TPP offer prior to the specified "Modification Effective Date"[7], if the borrower has "not made the Trial Period Payments required under Section 2" of the TPP, or if "the Servicer determines that [the borrower's] representations in Section 1 are no longer true and correct" (including that the borrower has submitted all documents supporting their qualifications for HAMP), then the mortgage and note will not be modified, the TPP will be terminated, and the borrower will be ineligible for HAMP.  *Id.* at 2 (§ 2(F)); *id.* at 3 (§§ 2(G), 3).

## III.    GOVERNING RULE 23 STANDARDS

The party seeking class certification bears the burden of demonstrating that each of the four requirements of Rule 23(a) are met – numerosity, commonality, typicality, and adequacy of representation – *and* at least one of the requirements of Rule 23(b).  *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 18 (1st Cir. 2008) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  If any one of the Rule 23 requirements is not met, certification must be denied.  *Makuc v. American Honda Motor Co., Inc.*, 835 F.2d 389, 394-95 (1st Cir. 1987).

Before ordering that a lawsuit may proceed as a class action, the district court must conduct a "rigorous analysis of the prerequisites established by Rule 23," and "evaluate the plaintiff's evidence" to determine whether the plaintiff has established the facts necessary to meet those prerequisites.  *In re New Motor Vehicles,* 522 F.3d at 17; *see also In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3rd Cir. 2008) ("[T]o certify a class the district

---

[7] The "Modification Effective Date" is defined to be "the first day of the month following the month in which the last Trial Period Payment is due."  Jones Decl., Ex. A at 2 (§ 2).

court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23.").  In order to permit the court to make such an analysis, it must "probe behind the pleadings . . . to formulate some prediction as to how specific issues will play out" at trial.  *In re New Motor Vehicles*, 522 F.3d at 17.  "A party's assurance to the court that it intends or plans to meet the requirements is insufficient."  *In re Hydrogen Peroxide Litig.*, 552 F.3d at 318.  A class certification determination requires the court "to consider the nature and range of proof necessary to establish" the allegations in the complaint, *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982), and generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).  Plaintiffs' motion ignores this "rigorous standard."  They have neither pursued discovery nor put forth any "demonstration as to how specific issues will play out" at trial.  *In re New Motor Vehicles*, 522 F.3d at 17.

**IV.     ARGUMENT**

   **A.     Plaintiffs' Attempted Piecemeal Certification Is Improper.**

         **1.     Rule 23 Does Not Permit Certification of a "Provisional" Class.**

Plaintiffs' motion should be denied because it seeks only to certify part of this lawsuit under Rule 23(b)(2), with the premise that it will ask the Court to certify a separate "broader class" related to "damages" later, and then at some unidentified point, conduct "additional proceedings on final class certification" on a "schedule ordered by the Court."  See Memo. in Supp. of Pls.' Mot. for Provisional Class Cert. ("Motion") at 3 n. 2; 4 n.3.  Plaintiffs' proposal for having three bites at the certification apple is unsupported in Rule 23 or the governing caselaw.

Rule 23 does not allow for "provisional" class certification.  Rule 23(c)(1) was amended in 2003 to *delete* the provision that class certification "may be conditional."  *See* Fed. R. Civ. P. 23, Advisory Committee's Notes to 2003 Amendments, Subdivision (c); 5 James Wm. Moore, *Moore's Federal Practice* § 23.80[2] (3d ed. 2008) ("The 2003 amendment clarifies that courts should not grant certification except after searching inquiry, and that courts should not rely on later developments to determine whether certification is appropriate.").  Courts have similarly found provisional or conditional certification inappropriate following the amendment.  *In re Hydrogen Peroxide*, F.3d at 319-320 (citing elimination of "conditional" certification language as basis for demanding that court only certify class after full rigorous analysis of certification requirements); *In re Pharmaceutical Industry Average Wholesale Price Litig.*, 230 F.R.D. 61, 80 (D. Mass. 2005) (relying on 2003 amendment in declining to certify class and noting that court could no longer conditionally certify class following amendment).  Plaintiffs cite two district court cases from thirty-five and thirteen years ago, respectively, and a single treatise that asserts, without citation to a single case or rule, that provisional certification can be granted to ensure compliance with court orders.  *See* Motion at 10-11.  Each of plaintiffs' authorities cites to the pre-2003 version of Rule 23.  Neither of the cases has ever been cited for the proposition that it is appropriate to certify a provisional class under the circumstances presented here, and Plaintiffs fail to cite any post-2003 authority endorsing the type of "provisional class" they seek.  BAC was unable to find any case granting a motion for provisional certification after 2003.[8]

---

[8] Cases involving conditional certifications in connection with class action settlements do not provide grounds for recognizing a right to "provisionally" certify a class for injunctive relief here.  There are numerous procedural safeguards in place for conditional certifications of settlement classes that are not present for "provisional" certifications.  Federal Rule of Civil Procedure 23(e) requires judicial approval of all class action settlements.  "[A] preliminary approval of a settlement and a conditional class certification do[ ] not dispose of the litigation as significant hurdles must be met and cleared if a final settlement is to be approved."  *See In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 88 (D. Mass. 2005) (citing *Amchem*, 521 U.S. at 620); *In re Relafen Antitrust Litig.*, 360 F. Supp. 2d 166, 192-94 (D. Mass. 2005).  "Considerations stemming from structural concerns about potential collusion and reverse auctions in settlement class actions make it incumbent on the district court to give heightened

Plaintiffs' proposed conditional certification is precisely that which the 2003 amendments were designed to prevent – piecemeal certifications based on as-yet-to-be-determined facts and circumstances.  Plaintiffs' request for provisional certification lacks a basis under Rule 23 and can and should be denied on that ground alone.

## 2. Certification Under Rule 23(b)(2) Is Reserved For "Final Injunctive Relief."

The certification motion should similarly be denied because it does not, on its face, seek final injunctive relief as Rule 23 requires.  Plaintiffs assert that certification of a "provisional" class is appropriate in the present case because the requirements of Rule 23(b)(2) have been met. Yet there is a logical disconnect between the purpose for which Plaintiffs seek certification – the entry of a preliminary injunction – and the plain language of Rule 23(b)(2), which provides that a class may only be certified if it is appropriate to enter "*final* injunctive relief or corresponding declaratory relief with respect to the class as a whole" (emphasis added).  The plain meaning of this language is that the class must be seeking a final order – "a request for a TRO or preliminary injunction does not qualify." *McGlothlin v. Connors*, 142 F.R.D. 626, 640 (W.D. Va. 1992) (noting that plaintiffs' request for preliminary injunctive relief "does not fall squarely into Rule 23(b)(2)" but certifying class because plaintiffs also sought declaratory relief).  As the Tenth Circuit has explained:

> Fed. R. Civ. P. 23(b)(2) provides an action may be maintained as a class action if all the requirements of subsection (a) are met and the party opposing the class has made *final* injunctive relief appropriate.  In this appeal, we are concerned with *preliminary* injunctive relief only, not *final* injunctive relief. Therefore, by its own language Rule 23(b)(2) clearly does not apply.

---

scrutiny to the requirements of Rule 23 in order to protect absent class members." *In re M3Power Razor Syst. Mktg. & Sales Practice Litig.,* No. 05-11177, 2010 WL 3082198 (D. Mass. Aug. 6, 2010) (citing *id.*).  The heightened scrutiny required for conditional settlement class certifications ensures that both absent class members and/or individuals excluded from the class have the opportunity to be heard and, if appropriate, to object.  There are no similar safeguards in place with a provisional certification of the type that Plaintiffs seek here.

*Broadnax v. U.S. Parole Comm'n*, 116 F.3d 489 (10th Cir. 1997) (unpublished) (citation

omitted; emphasis in original); *see also Matzke v. Block*, 542 F. Supp. 1107, 1109 (D. Kan.

1982) (noting that Rule 23(b)(2) "provides for 'final injunctive relief' rather than preliminary

injunctive relief"); 7AA Wright & Miller, *Federal Practice & Procedure* § 1775 (2010) ("[T]he

class must be seeking a 'final' injunction; a request for a temporary restraining order or a

preliminary injunction does not qualify under Rule 23(b)(2)."). Under the plain language of Rule

23(b)(2), this Court may not certify a provisional class for purposes of entering a preliminary

injunction.

### 3.   The Factual Record Is Insufficient to Permit Certification As No Discovery Has Occurred.

No class can be certified for the additional reason that the request is premature. Class

certification cannot be granted in an evidentiary vacuum, but requires a factual foundation

developed through discovery. The First Circuit has emphasized the importance of discovery to

class certification decisions, cautioning that "[i]n all but the clearest of cases, the existence vel

non of a sufficiently defined class is appropriately addressed after some development of the facts

and under Rule 23's established protocol for weighing the propriety of class certification."

*College of Dental Surgeons of P.R. v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 41 (1st Cir. 2009).

And, when faced with class certification decisions based upon undeveloped factual records, the

First Circuit has not hesitated to reverse and remand for further factual development. *In re New*

*Motor Vehicles*, 522 F.3d at 26 (reversing district court's certification where district court

"rul[ed] on class certification before discovery was completed and . . . rel[ied] upon the

plaintiffs' representation that they would fill in the gaps in their evidence with further discovery

and further work"); *Yaffe v. Powers*, 454 F.2d 1362, 1367 (1st Cir. 1972) (reversing class

certification decision on grounds that further discovery was needed).[9]

The importance of a sufficient factual basis for certification is reflected in the 2003

amendments to Rule 23. Those amendments replaced the requirement that the court determine

whether to certify a class "as soon as practicable after commencement of an action" with the

requirement that the court make that determination "at an early practicable time." The Third

Circuit, remarking on this amendment, has noted that "this change in language, though subtle,

reflects the need for a thorough evaluation of the Rule 23 factors – for this reason the rule does

not require or encourage premature certification decisions." *In re Hydrogen Peroxide*, 552 F.3d

at 318. The comments accompanying the 2003 amendment further explain that the change in

language was made in part because "[t]ime may be needed to gather information necessary to

make the certification decision," including "controlled discovery into the 'merits.'" Fed. R. Civ.

P. 23, Advisory Committee's Notes to 2003 Amendments, Subdivision (c); *see also In re New*

*Motor Vehicles*, 522 F.3d at 17 ("It is a settled question that some inquiry into the merits at the

class certification stage is not only permissible but appropriate to the extent that the merits

overlap the Rule 23 criteria.").

In the present case, there has been no gathering of information, and no discovery into the

merits – controlled or otherwise. The factual record is anemic. Plaintiffs make little effort to

---

[9] Other circuits – including the very authority on which Plaintiffs rely – also underscore the necessity of factual development to class certification. For example, in *Baby Neal v. Casey*, 43 F.3d 48, 54 (3d. Cir. 1994), a case on which plaintiffs heavily rely, the court *deferred* ruling on a motion for class certification *three times* to allow for additional discovery into whether plaintiffs satisfied the elements of Rule 23. Other cases have reached the same result. *See In re Initial Pub. Offering (IPO) Sec. Litig.*, 471 F.3d 24, 33, 40-42 (2d Cir. 2006) (finding certification is appropriate only if district court finds that each Rule 23 requirement has been *satisfied*, not merely supported by "some evidence" or a superficial showing); *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (noting that "going beyond the pleadings is necessary," as "[t]he plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification"); *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1086 (6th Cir. 1996) (stating that court should defer decision on certification pending discovery if existing record is inadequate for resolving issues relevant to certification).

carry their burden of producing evidence that shows that each of the requirements for certification is met.  There has been no written discovery and neither Plaintiffs nor BAC has produced a single document in this case.  BAC has not had the opportunity to depose Plaintiffs and test their assertions that their claims are typical of those of other members of the putative class and that they are adequate class representatives.  Among other things, in an action based on an alleged breach of contract, BAC is entitled to determine whether each of the Plaintiffs' representations in the purported contracts are true.  Nor has BAC had the opportunity to examine the basis of the opinions offered by Plaintiffs' "expert," Christopher Wyatt.  Plaintiffs have no evidence of BAC's policies and procedures concerning HAMP or of uniformity of the foreclosure practices they seek to enjoin, nor is there any evidence that would enable the Court to evaluate how specific issues will play out at trial.  *In re New Motor Vehicles*, 522 F. 3d at 17.

Instead of pointing to a factual record shaped by discovery, Plaintiffs rely primarily on their untested assertions and allegations to argue in favor of certification.  But bare allegations cannot substitute for actual facts.  *See Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365-67 (4th Cir. 2004) (reversing certification and remanding for further factual analysis where district court merely accepted plaintiffs' allegations in making certification decision); *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 295 (1st Cir. 2000) ("court must understand the claims, defenses, *relevant facts*, and applicable substantive law in order to make a meaningful determination of the certification issues") (emphasis added).  Though Plaintiffs attempt to supplement their scant factual record by submitting the affidavits of four borrowers who purportedly fall within Plaintiffs' provisional class definition, none of these additional four affiants are named Plaintiffs in this case, and no affiant has yet to be tested by deposition.  With a single exception, none of the named Plaintiffs has even submitted an affidavit that attests to

15

facts showing that he or she is a typical or adequate class representative.  Under these

circumstances, it would be impossible for the Court to conduct the "rigorous analysis" required

to certify any class, much less award class members the extraordinary injunctive relief Plaintiffs

seek here.

> ### B.      No Class Can Be Certified Here, Provisional Or Otherwise.

> #### 1.      The Requirements For Class Certification Under Rule 23(b)(2) Are Not Met Even If the Inadequate Record is Overlooked.

Plaintiffs do not come close to satisfying the criteria under Rule 23(b)(2).  Rule 23(b)(2)

is reserved for cases where the "party opposing the class has acted or refused to act on grounds

generally applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) classes are limited to situations where the "injunctive relief referred to (in the rule)

does not require that the district court look into the particular circumstances of each member of

the class."  *Griffin v. Burns*, 570 F.2d 1065, 1074 (1st Cir. 1978).  Rule 23(b)(2) was designed

for civil rights and discrimination cases, not attempts to enforce government contracts, or

contract claims in general.  This is because "[i]njuries remedied through (b)(2) actions are really

group, as opposed to individual injuries.  The members of a (b)(2) class are generally bound

together through preexisting or continuing legal relationships or by some significant common

trait such as race or gender."  *Barnes v. Am. Tobacco Co.*, 161 F. 3d 127, 143 n.18 (3d Cir. 1998)

(citation omitted); *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 103 (D. Mass.

2010).  Because of the individual issues involved in this case, such as whether a borrower

qualified for HAMP and/or whether a borrower complied with his TPP obligations, each class

member's claim must be individually examined.  This is not a case where the particular

circumstances of each class member can be ignored and a group remedy applied.

The 23(b)(2) standard is an exacting one, with two key components.  First, plaintiffs must show that there was repeated and essentially uniform action that affected the entire class and which is the object of the suit – that Defendants "acted or refused to act on grounds that apply generally to the class."  Some courts refer to this element as the "cohesiveness" requirement, *Barnes*, 161 F.3d at 142-43; *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1121-22 (8th Cir. 2005)), other courts focus on class homogeneity.  *See, e.g.*, *Von Colln v. County of Ventura*, 189 F.R.D. 583, 593 (C.D. Cal. 1999) ("[T]he hallmark of a 23(b)(2) class action is homogeneity."). Regardless of labels, the concept is that given the mandatory nature of the class, Rule 23(b)(2) presumes "that the case will not depend on adjudication of facts particular to any subset of the class nor require a remedy that differentiates materially among class members."  *Lemon v. Int'l Union of Operating Eng'rs*, 216 F.3d 577, 580 (7th Cir. 2000); *see also Shook v. Bd. of County Comm'rs of County of El Paso*, 543 F.3d 597, 604 (10th Cir. 2008) ("Rule 23(b)(2) demands a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification."); *DeRosa*, 694 F. Supp. 2d at 105 (Rule 23(b)(2) cases in which plaintiffs seek monetary relief inappropriate for certification because such analysis "necessarily implicates the subject differences of each plaintiffs' circumstances").

Second, plaintiffs must show that the general conduct that allegedly gives the class a uniform interest can be vindicated uniformly by the legal claims that are pressed – that the conduct thereby makes "final injunctive relief . . . appropriate."  Fed. R. Civ. P. 23(b)(2).  If the class has some common interest but, under the controlling law or facts, individualized treatment is required of many (or even each) class members' legal claims, then there cannot be an injunctive class.  *DeRosa*, 694 F. Supp. 2d at 104-05.

17

Here, plaintiffs do not meet the twin requirements of Rule 23(b)(2).  There are simply too many variables – none of which are addressed by Plaintiffs – that prevent this Court from certifying a class.

>           **a.      Plaintiffs Present No Evidence that BAC Acted on Grounds
>                      Generally Applicable to the Class.**

Plaintiffs make the legal assertion that BAC acted on grounds generally applicable to the class, but that legal assertion is unsupported by evidence.  The "assertion" is fundamentally that every borrower who made three TPP payments is entitled to a permanent modification and thus cannot be foreclosed upon.  Motion at 3.  But the provisional class plaintiffs seek to certify excludes from the class sought in the complaint the critical requirement that class members "have complied with their obligations under a written TPP."  *See* Compl. ¶ 165.  As such, the class by definition includes individuals who did *not* satisfy their TPP obligations, but plaintiffs seek an injunction on their behalf anyway.  In other words, even borrowers who would never qualify for HAMP, or those that might not have satisfied their TPP obligations, are members of the class and entitled to an injunction.  It is thus impossible to see how BAC could have "acted on grounds generally applicable to the class," when the class itself has fundamentally different and individual interactions with BAC.

As discussed in detail in the Preliminary Injunction Opposition, in order for a class member to obtain an injunction, he would at least need to establish a likelihood of success on the merits.  In a case like this one, which alleges that BAC failed to provide plaintiffs a permanent HAMP modification, a class member at a minimum must show that he qualifies for HAMP.  *See* TPP at 3 (§ 2(G)) (borrower's loan will not be modified unless the borrower meets "all of the conditions required for modification").  Borrowers could have met the initial TPP eligibility requirements, but ultimately been found HAMP-ineligible, for any number of reasons.  For

example, the borrower may have been untruthful, mistaken or unclear in verbal representations to obtain a TPP; the borrower's home value or income may have changed since the initial TPP evaluation; or the borrower may not have submitted the required documents.  Despite what plaintiffs imply, HAMP guidelines at the time each of the plaintiffs was considered did not require that simply because a borrower qualified for a TPP that no further assessment of eligibility for a permanent HAMP modification would occur.  *See* Motion at 7.  Borrowers could therefore have been eligible for a TPP but not eligible for a permanent modification.[10]  Such is not the basis for a (b)(2) class because the manner in which BAC "acted or refused to act" will differ by class member.  It is fundamentally not behavior toward the class as a whole.

A few examples make this point.  Carmen Fox was given a TPP based on unverified income of more than $3,500.  Jones Decl. ¶ 10.  As such, Fox was given a TPP with a payment of $1,097.40, or 31% of the $3540 reported income.  Jones Decl. ¶ 10.  But Fox's verified income was substantially lower than the amount used to qualify her for a TPP, and she was thus ineligible for HAMP.  Indeed, based on Fox's verified income, an affordable 31% payment under HAMP would be $615.25, requiring forbearance by BAC of over $149,000.00, well more than required by HAMP and more than half of Fox's loan amount.  Jones Decl. ¶¶ 11-13; *see* HAMP Supp. Directive 10-01, at 6 (Jan. 28, 2010) (borrowers ineligible for HAMP if forbearance of more than 30% of unpaid balance of loan would be required to achieve 31% payment).

---

[10] Although the Complaint contends that BAC "waived" its right to evaluate borrowers for HAMP eligibility where no written denial of a permanent modification was issued within three months, Compl. ¶ 182, plaintiffs point to no provision of the TPPs that sets any such deadline.  The TPPs state that "time is of the essence," but do not set any deadline other than the trial payment deadlines.  The TPPs define "Modification Effective Date" as the end of the Trial Period, but nowhere do they state a modification must be made by that date.  On the contrary, the TPPs provide that no modification can occur until *after* that date.  *See, e.g.*, Jones Decl., Ex. B at 3 (§ 2(G)); Jones Decl., Ex. D at 3 (§ 2(G)); Jones Decl., Ex. F at 3 (§ 2(G)).  HAMP-ineligible class members have no basis to demand a HAMP modification.

Under plaintiffs' class definition, Fox would be a class member and obtain an injunction because she was not declined until two months following the end of her trial period.  But BAC has determined that Fox still would not have been qualified for a permanent modification based on her verified income as of the "Modification Effective Date" set forth in her TPP.  Jones Decl. ¶ 14.  BAC is entitled to defend itself against Fox's claims on these facts, thus establishing exactly the type of "factual differences that translate into significant legal differences" that make (b)(2) certification inappropriate.  *Barnes*, 161 F.3d at 142.

Plaintiff Vellyn Antonelli is another example of why BAC cannot be said to be acting in a manner generally applicable to the class.  Like Fox, Antonelli was granted a TPP based upon unverified monthly income of over $3,700.00.  Jones Decl. ¶ 17.  And, like Fox, her verified income was substantially less than that.  With Antonelli's verified income of $1,311.00, a 31% mortgage payment would be only $406.40 – less than her monthly escrow payments.   Jones Decl. ¶ 18.  As a result, BAC would need to forbear the entire unpaid balance of her loan to achieve an "affordable" payment.  Jones Decl. ¶ 18.  Based upon her verified income, Antonelli is not eligible for a permanent modification under HAMP.

Similar individualized issues affect the non-plaintiff borrowers who have submitted affidavits in support of plaintiffs' motion and other putative class members.  For example, some borrowers may not have made all their TPP payments on time.  Brian Tirrell is an example of a borrower who made some of his payments late.  Jones Decl. ¶¶ 39-40.  Other borrowers may have made all their payments late.  Each borrower's files will need to be examined to make that determination.

Similarly, the TPP requires borrowers to make at least six different representations to BAC in order to obtain a permanent modification.  The falsity of any of the representations

results in the cancellation of modification efforts.  *See* pp. 7-9 above.  As one example, each TPP

borrower represents that his hardship information continues to be accurate.  Under plaintiffs'

theory, this representation is irrelevant because once a TPP is issued the borrower automatically

qualifies for a permanent modification if he makes three payments.  But this argument in

inconsistent with the purpose of HAMP and the requirements of the TPPs.  Many borrowers

sought HAMP relief because of the loss of a job.  Their hardship affidavits would relate that job

loss as a basis for the TPP.  Under plaintiffs' theory, that borrower would automatically get a

permanent modification even if on the day after submitting his TPP, or a week later, or a month

later, he got a new job that removed the hardship.  This makes no sense.  HAMP was designed to

help people in trouble, not help people who got out of trouble.

The converse is equally true.  If a borrower submitted a TPP but then subsequently lost

his job such that he could not even afford the trial payments, HAMP is not available to that

borrower.  Although designed to help borrowers in financial trouble, HAMP was not intended to

solve every problem or prevent every foreclosure.  If  the modification is doomed to fail due to a

job loss, the borrower must correct his hardship affidavit representation.  Whether he did so and

whether he did so truthfully will vary borrower to borrower across thousands of applicants.

The hardship representation is only one of six required by the TPP.  To be eligible for

permanent modification, each borrower will need to prove up his compliance with all six,

including that the borrower still maintains the property as a principal residence, there has been no

ownership change and that the borrower will seek credit counseling if asked.  Determining

whether each of these representations is accurate among thousands of borrowers cannot, in any

way, shape or form, be viewed as BAC acting in a way generally applicable to the class.[11]

---

[11] By way of further example, once Frederic Marino's monthly income was verified, it became clear that his
monthly mortgage payment was *already* less than 31% of his income.  Jones Decl. ¶ 44.  He was therefore ineligible

Because this case will necessarily "depend on adjudication of facts particular to" the class members, it cannot be certified as a 23(b)(2) class because by its very nature it does not involve acts generally applicable to the class. *Lemon*, 216 F. 3d at 580.

**b.      Plaintiffs' "Expert" Declaration Does Not Provide a Basis for Certification.**

Despite seeking class certification and an injunction preventing all foreclosures, plaintiffs have proffered no evidence whatsoever as to why or how it would be appropriate for HAMP ineligible borrowers to be members of the class or the beneficiaries of an injunction.  In fact, the only "evidence" of BAC's actions being applicable to the class as a whole is the declaration of plaintiffs' "expert," Mr. Wyatt, who has concluded, based on nothing more than a review of publicly available information, that BAC has only converted 25% of its temporary modifications to permanent ones.  From this proposition, Wyatt concludes that as a result of "inadequate staffing and procedures," BAC "routinely failed to honor its promise to provide Home Affordable Modifications" to members of the putative class.  Motion at 13.  Of course, Wyatt makes no effort to determine whether a single named plaintiff or class member actually qualified for HAMP.  As such, he presents no evidence for his assertion that BAC "failed to honor its promise" to provide a HAMP modification to any plaintiff, let alone to the class as a whole.[12]

Plaintiffs present no evidence that the alleged "inadequate staffing and procedures," even if true, caused BAC to "routinely" fail to enter into permanent modifications with eligible homeowners.  In fact, the Treasury Department itself has stated that the most common reasons

---

for a permanent modification under the HAMP guidelines in effect at the time.  *See* Compl., Ex. 2 at 6 ("The borrower will only qualify for the HAMP if the verified income documentation confirms that the monthly mortgage payment ratio prior to the modification is greater than 31 percent.").  Brian Tirrell was late with his HAMP trial payments.  Jones Decl. ¶¶ 39-40.  Dennis Ingham and Eleanor Murphy did not qualify for HAMP based on their verified income.  Jones Decl. ¶ 50.  Noel and Kimberly Ayers never returned their signed TPP to BAC.  Jones Decl. ¶ 54.

[12] For these and other reasons, Wyatt's declaration should be disregarded as set forth in BAC's Motion to Strike, to be filed.

trial plans are not converted into final modifications are:  (1) a failure by borrowers to return all required documentation; (2) mortgage payments that are already below the 31% target and (3) verified income not matching represented income.  *See* U.S. Dep't of Treasury, Making Home Affordable Program Servicer Performance Report Through July 2010, at 1, 6, *available at* http://www.financialstability.gov/docs/JulyMHAPublic2010.pdf (last visited Oct. 13, 2010); *see also* Treasury Decl. ¶ 26 (more than 60% of non-conversions due to borrowers' failure to submit documentation).  As such, Wyatt's unsupported suppositions as to BAC's "inadequate staffing and procedures" is evidence of nothing, and certainly not evidence that BAC acted in any way generally applicable to the class.

Moreover, as discussed above, Section 1 of the TPP document requires that the borrower actually qualify for HAMP and that six specific representations made by the borrower "continue to be true in all material respects."  A borrower's failure to satisfy any one of them provides grounds for refusing to grant a permanent modification.  Wyatt makes no effort to factor this key determination into his analysis.  Indeed, Wyatt fails to cite to any admissible evidence explaining why any eligible borrowers were not converted into permanent modifications.[13]  This is not surprising, as Wyatt has not interviewed any BAC representatives or reviewed any BAC documents reflecting BAC's policies and procedures concerning HAMP.  In fact, Wyatt's conclusion concerning BAC's "routine failures" is based solely on out-of-context testimony from one BAC representative in 2009 and a June 2, 2010 article from the Huffington Post.  Such is hardly grounds to certify a class.

---

[13] It is well established that "class certification decisions must be made based on admissible evidence."  *DeRosa v. Massachusetts Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 98 (D. Mass 2010) (denying motion for class certification under Rule 23(b)(2) where plaintiffs presented nothing more than anecdotal evidence based largely on hearsay and speculation).

Wyatt's report simply fails to demonstrate that BAC is acting or refusing to act on grounds generally applicable to the class. The examples of Fox and Antonelli, described above, which Wyatt ignores, when combined with Treasury Department documents and testimony, strongly suggest that the failure to convert eligible borrowers to permanent modifications is caused by income or documentation problems on the borrower end.

In short, based on the fundamental lack of evidence as to BAC's actions toward the class as a whole, plaintiffs have not satisfied the requirements of Rule 23(b)(2).

> **c.    The Complaint Seeks Compensatory and Punitive Damages, Thus Making Rule 23(b)(2) Certification Improper.**

Rule 23(b)(2) certification fails for the additional reason that the complaint on its face seeks compensatory damages, treble damages under Chapter 93A, and a host of other damage claims against BAC. Compl. ¶ 202 (claiming injury for wrongful foreclosures, "avoidable losses of homes," less favorable loan modifications, "incurred fees and other costs," loss of savings, "lost opportunities to pursue other refinancing" and "significant stress and emotional distress"). As such, "final injunctive relief" under Rule 23(b)(2) is not appropriate.

It is beyond dispute that when damages issues are a significant part of a putative class action, Rule 23(b)(2) certification is not permitted. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 (5th Cir. 1988); *see also De Rosa,* 449 F. Supp. 2d at 104-05 (denying class certification and concurring with the majority of federal courts that seeking compensatory and punitive damages make Rule 23(b)(2) certification unavailable); *Christ v. Beneficial Corp.,* 547 F.3d 1292, 1298 n.11 (11th Cir. 2008) (vacating certification order because "mere recitation of a request for declaratory relief cannot transform damages claims into a Rule 23(b)(2) class action"). Cases seeking compensatory and punitive damages are inappropriate for certification under Rule 23(b)(2) because they "necessarily implicate the subjective differences in each

plaintiffs' circumstances." *DeRosa*, 694 F. Supp. 2d at 105; *Mogel v. Unum Life Ins. Co.*, 646 F. Supp. 2d 177, 185 (D. Mass. 2009).

Here, it is plain that damages are a significant part of the case.  First, as noted, Plaintiffs seek a wide variety of non-injunctive relief, including treble damages under Chapter 93A. Multiple damages cases are inappropriate in a (b)(2) class.  *In re School Asbestos Litig.,* 789 F. 2d 996 (3d Cir. 1996).  In addition, the borrowers submitting affidavits seek damages beyond the requested injunction, including for "severe emotional distress and other injuries."  Marino Decl. ¶ 30; Tirrell Decl. ¶ 24 (claiming emotional distress of family members); Ingham/Murphy Decl. ¶ 31.  Finally, plaintiffs have made clear that damages is a significant issue in this case as they inform the Court that they will later seek certification of a damages class.  Motion at 2, 12. Given the extensive damages claims at issue, no Rule 23(b)(2) class may be certified.  *DeRosa,* 694 F. Supp. 2d at 105.

> **2.      Plaintiffs' Claims Are Not Typical of the Class and Plaintiffs Are Not Adequate Representatives.**

> **a.      The Motion Must Be Denied Because There Are No Facts Submitted by Any Plaintiff Other than Fox.**

Plaintiffs' claims are not typical of the class and they cannot be adequate class representatives because none of them other than Fox has submitted any evidence whatsoever in support of the motion. Because not a single plaintiff other than Fox has submitted any evidence in support of their claims, they cannot be typical or adequate class representatives and the motion should be denied.  *DeRosa*, 694 F. Supp. 2d. at 100.

> **b.      Plaintiffs Cannot Seek the Injunctive Relief Demanded.**

The Motion also fails Rule 23(a)'s requirements of typicality and adequacy because Plaintiffs seek an injunction preventing foreclosures but none of them faces any imminent threat.

A named plaintiff is not adequate or typical, and therefore cannot represent a class, when seeking classwide relief that he or she could not seek individually.  Courts routinely refuse to certify a class seeking injunctive relief where the named plaintiff cannot seek such relief.  *See, e.g.*, *In re New Motor Vehicles*, 522 F.3d at 14; *Cruz v. Farquharson*, 252 F.3d 530, 532-33 (1st Cir. 2001) (denying class certification where class sought injunction requiring faster review of visa petitions, because plaintiffs' petitions were processed shortly after suit was filed).  *DeRosa*, 694 F.Supp. 2d at 102 (the named plaintiff, a former employee, was "an inadequate representative . . . under Rule 23(b)(2) because an injunction is the primary relief requested and, because she would not benefit from such relief, she may not ardently advocate for it").

Here, plaintiffs argue only that Carmen Fox is in imminent danger of foreclosure.  They do so by relying on the inadmissible, triple hearsay representations of their counsel.  *See* Compl. ¶ 126; Motion at 14-15; Fox Decl. ¶¶ 8, 20; Delbaum Decl. ¶ 8.   Fox is not in imminent danger of foreclosure.  Prior to plaintiffs filing their motion, BAC cancelled the foreclosure sale for Fox and informed plaintiffs' counsel that the sale had been cancelled.  Declaration of James McGarry ("McGarry Decl.") ¶¶ 3-5; Declaration of Gregory Higeons ("Higeons Decl.") ¶ 4.  The cancellation thus means no sale can occur without the statutorily required notice of sale process beginning anew.  Harmon Decl. ¶ 3.  And BAC has directed its foreclosure counsel to take no further action pending further litigation developments.  *Id.* ¶ 5.

### c.  Plaintiffs Fail the Typicality Requirement.

Plaintiffs' claims are also not typical under Rule 23(a) because they do not "possess the same interest and suffer the same injury as class members."  *Mogel*, 646 F. Supp. 2d at 182.  As the plaintiffs' own loan histories reflect – and as is explored in detail in section B.1.a above, there are a myriad of reasons unique to a given borrower why a TPP may not be converted into a permanent loan modification that have nothing to do with the BAC's "staffing and procedures."

Carmen Fox and Vellyn Antonelli were denied modifications once their income information was verified.  The servicing of James and Margaret Cooley's loan was only transferred to BAC after they had received their TPP from another servicer, and BAC did not have the documents and information necessary to evaluate them for a permanent HAMP modification at the time the complaint was filed.  Jones Decl. ¶¶ 30-31.

Plaintiffs Johnson, Anderson and Angelopoulos have all received permanent modifications, (Jones Decl. ¶ 36) so do not have claims typical to the class.  Indeed, they do not have claims at all.  Cabrera has been offered a permanent modification with a 2% interest rate, but he has not yet accepted the offer.  All named Plaintiffs were either given or denied permanent modifications for very different reasons, each dependent upon the facts of their individual cases.  These distinctions bar certification.

Moreover, plaintiffs' claims are not typical of the class because there is no evidence that BAC is foreclosing on everyone – or ever will.  Not a single Plaintiff or affiant has attested that BAC actually held a foreclosure sale on their home.  A handful of Plaintiffs and afffiants complain only that BAC has *scheduled* foreclosure sales – sales that were later postponed.  In other words, those individuals complain that BAC has not suspended foreclosure proceedings entirely.  But, under the terms of Plaintiffs' own TPPs, nothing requires BAC to do this; in fact, the TPPs explicitly recognize that "any pending foreclosure action will not be dismissed . . . ."  Jones Decl., Ex. A at 2 (§2(B)); *see also see also* Treasury Department, *MHA: Handbook for Servicers of Non-GSE Mortgages* (Version 2.0, Sept. 22, 2010) at 28, *available at* https://www.hmpadmin.com/ portal/docs/hamp_servicer/mhahandbook_20.pdf (requiring only that servicer "not refer any loan to foreclosure or conduct a scheduled foreclosure sale" during pendency of trial plan); *id.*, Exhibit B (suggested Treasury form notice to borrowers that explains

that "we will continue the foreclosure process" and warns the borrower to "not ignore any foreclosure notices").  And, with respect to borrowers submitting affidavits, there is not even a foreclosure proceeding pending.  Marino's foreclosure sale was postponed, despite that he is HAMP ineligible.  Higeons Decl. at ¶ 10.  The remaining affiants do not allege a pending foreclosure sale and none are scheduled.  *See* Higeons Decl. at ¶¶ 5-12.  Because none of the plaintiffs' claims are typical of the class, plaintiffs' certification motion must be denied.

### 3.    Defenses To Plaintiffs' Claims for Injunctive Relief, and Other Considerations, Should Prevent Any Certification.

The First Circuit has confirmed that the presence of an affirmative defense should be considered in making class certification decisions.  *Waste Mgmt. Holdings, Inc.*, 208 F.3d at 295.  Accordingly, "[d]efenses that are peculiar to the named plaintiff or a small subset of the plaintiff may destroy the required typicality of the class."  *Abt v. Mazda Am. Credit*, No. 98-C-2931, 1999 WL 350738, at *3 (N.D.Ill. May 19, 1999) (citation omitted).  Here, the many class-member specific defenses that BAC is entitled to raise and prove include a lack of standing to pursue an injunction where judgment and orders in other cases may be at issue (as it is undoubtedly the case that many of the members of the putative class may have tried, on their own, to sue their lender to halt their foreclosure either in state or bankruptcy court).  Under *Celotex*, it is not open for this Court to reach into other courts' cases and review, modify, or upset any of those orders.  Judicial estoppel, res judicata, and the Rooker-Feldman doctrine are all potential defenses available to BAC as to specific class members.  It is highly likely that in the class plaintiffs seek to certify, there will be numerous class members' claims that are barred by one or more of these doctrines.  Resolving this issue requires an individualized inquiry into each borrowers' claims.

### C.        Plaintiffs Seek An Inappropriate Fail-Safe Class.

The Motion should be denied for the additional reasons that it seeks an impermissible

fail-safe class.  Plaintiffs ask the Court to certify a class of individuals who entered into TPPs

with BAC, made the required payments, but have not received a permanent modification or a

written denial of eligibility on or before the Modification Effective Date in the TPP.  According

to plaintiffs, all borrowers that fall into this class are entitled to an injunction barring BAC from

foreclosing on them.  But plaintiffs have not shown, and make no effort to show, that BAC failed

to comply with HAMP such that it would be appropriate to enjoin BAC from foreclosing on all

class members' claims.  Instead, under plaintiffs' theory, all borrowers that are members of the

proposed class are necessarily entitled to injunctive relief.  In this way, plaintiffs' proposed class

is an impermissible "fail-safe" class where class members are entitled to relief by virtue of their

status as class members.

As plaintiffs' own evidence shows, however, just because a borrower entered into a TPP,

made the payments required under the TPP, and has not received a permanent modification or a

written denial of eligibility does not mean that BAC failed to comply with HAMP or the TPP

and that BAC should be precluded from foreclosing.  A "fail-safe" class is one in which the

putative class is defined by reference to the merits of the underlying claims, such as a class of

"all consumers who were defrauded by ABC Corporation" or "all employees who were

underpaid by "XYZ Corporation."  Under such class definitions, a consumer whom ABC

Corporation did not defraud or an employee who XYZ Corporation did not illegally underpay

would not be members of the class.  These lawsuits have been termed "fail-safe" class actions

because the plaintiffs' lawyers who advance them cannot lose.  If ABC Corporation and XYZ

Corporation did not do anything wrong, then there are no members of the class, and thus no one

whose claims would be precluded by a judgment in the defendants' favor.  Moreover, in these

29

cases, plaintiffs often avoid alleging a systematic wrong- for example, that a defendant defrauded every customer or underpaid every employee – but rather contend that the defendant had an unspecified "pattern" or "practice" of committing the alleged wrong.  *See Removing the "Fail Safe" Class Action under CAFA*, Washington Legal Foundation, Vol. 24 No. 38.

## V.      CONCLUSION

For the reasons stated above, BAC respectfully requests that the Court deny plaintiffs' motion for class certification in its entirety.

Dated:  October 15, 2010

Respectfully submitted,
BAC Home Loans Servicing, L.P.,
By its attorneys,

/s/ James W. McGarry

James W. McGarry (BBO No. 633726)
jmcgarry@goodwinprocter.com
Mark Tyler Knights (BBO No. 670991)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 15, 2010.

/s/ James W. McGarry