UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PATRICIA JOHNSON, FAUSTO CABRERA,
VELLYN ANTONELLI, CARMEN FOX,
MARK ANGELOPOULOS, DIANE
ANDERSON, JAMES COOLEY, AND
MARGARET COOLEY, on behalf of herself
and all others similarly situated,

       Plaintiffs,

  v.

BAC HOME LOANS SERVICING, LP, a
subsidiary of BANK OF AMERICA, N.A.,

       Defendant.

Civil Action No. 10-10316 - RWZ

**DEFENDANT BAC HOME LOANS SERVICING, LP'S OPPOSITION
TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ..................................................................................................................3

    A.    The Home Affordable Modification Program ...............................................4

    B.    Named Plaintiffs Other Than Carmen Fox. ...............................................4

    C.    Carmen Fox. .......................................................................................5

STANDARD .......................................................................................................................7

ARGUMENT ......................................................................................................................8

I.    PLAINTIFFS HAVE NOT MET THE BURDEN OF DEMONSTRATING THAT THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE SATISFIED. ...................................................................................................8

    A.    Plaintiffs Face No Threat of Immediate Harm. .........................................8

    B.    Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits. .............................................................................................11

        1.    Plaintiffs Have No Private Right of Action Under HAMP. .............. 11

        2.    Plaintiffs' Back-Door Attempt to Enforce HAMP Should Be Rejected .................................................................................. 12

        3.    Plaintiffs are Unlikely to Succeed on Their Breach of Contract Claim. ..................................................................................... 14

            i.    The TPPs Are Not Enforceable Contracts ................................ 14

                (a)    No valid consideration exists ..................................... 14

            ii.    The TPPs are, at most, agreements to agree. ......................... 17

            iii.    Plaintiffs have not identified cognizable damages. .................. 17

            iv.    Fox has not complied with her obligations under the TPP. ..................................................................................... 18

        4.    Plaintiffs are Unlikely to Succeed on Their Claim for Breach of the Covenant of Good Faith/Fair Dealing. .......................... 19

        5.    Plaintiffs are Unlikely to Succeed on Their Claim for Promissory Estoppel. ................................................................ 20

        6.    Plaintiffs' Chapter 93A Claim Cannot Support the Requested Injunction .................................................................. 20

    C.    The Equities Do Not Support an Injunction. ...........................................21

II.    IF THE INJUNCTION IS GRANTED, ALL BORROWERS WHO WANT ACCESS TO THE RELIEF SHOULD BE REQUIRED TO KEEP THEIR LOAN CURRENT, AND PLAINTIFFS MUST POST A SUBSTANTIAL BOND. ......................................................................................................22

    A.    The Loans Should be Paid Currently. ....................................................23

    B.    A Substantial Bond is Required. ............................................................23

CONCLUSION ................................................................................................................24

## INTRODUCTION

A preliminary injunction is an extraordinary equitable remedy, granted only when the movant makes a clear showing demonstrating entitlement to relief.  Plaintiffs have asked this Court to grant an injunction preventing BAC Home Loans Servicing LP ("BAC") from foreclosing on the defaulted mortgage loan of Carmen Fox, and on an undefined number of loans in default throughout the Commonwealth.  The basis for Fox's injunction request is that she was not offered a permanent loan modification under the federal government's Home Affordable Modification Program ("HAMP") to which she believes she was entitled.  As such, she asks the Court to enjoin BAC from foreclosing.

Plaintiffs have failed to satisfy their burden to demonstrate by a "clear showing" that any, let alone all, of the factors required to obtain the drastic remedy of a preliminary injunction have been satisfied.  First, Fox fails to demonstrate that she faces an immediate threat of harm.  Fox's foreclosure sale has been cancelled, so she faces no imminent threat.  No other named Plaintiff claims to be in imminent danger of foreclosure, and as such no injunction can issue as to them or to the putative "provisional class."  *See* Opp. to Prov. Class Cert. Motion, contemporaneously filed.  Indeed, Plaintiffs do not seek to enjoin foreclosures only on properties that are currently subject to, or are under an immediate threat of, foreclosure.  Rather, they seek to enjoin foreclosures on borrowers who entered into Trial Period Plans ("TPPs") under HAMP but have not yet been offered a permanent loan modification regardless of whether there is *any* threat of foreclosure – immediate or otherwise.  This is hardly the imminent, irreparable harm necessary for the issuance of an injunction.  For this reason alone, the Motion can and should be denied.

Second, Plaintiffs have failed to prove a likelihood they will succeed on the merits of their claims.  As an initial matter, HAMP cannot be enforced through means of a private lawsuit,

regardless of whether that claim is plead as a breach of contract, promissory estoppel, or other state law cause of action.  The relief sought amounts to nothing less than an attempted enforcement of the Treasury Department's HAMP program, for which Plaintiffs have no private right of action.  To be sure, Plaintiffs have attempted to dress up their HAMP enforcement claims as something else, but Plaintiffs are "precluded from asserting a private cause of action under the HAMP, even disguised as a breach of contract claim."  *Marks v. Bank of America, N.A.*, No. 03:10-CV-08039, 2010 WL 2572988, at *5-6 (D. Ariz., June 22, 2010).

Beyond Plaintiffs' improper attempt at an end run around the prohibition against private litigation under HAMP, Plaintiffs fail to demonstrate a likelihood of success on their contract claim because (1) they articulate no viable theory of consideration supporting the TPPs as independent contracts, (2) they fail to identify any cognizable legal harm suffered by entering into the TPP, and (3) even if the TPPs promised to offer a permanent modification, such an agreement would be an unenforceable "agreement to agree" because it lacks essential material terms (such as the monthly payment, total indebtedness, interest rate, etc.).  And as to Plaintiff Carmen Fox, the limited evidence to date shows that Fox was not and is not eligible for a HAMP modification, so she has no breach of contract claim at all.  Finally, Plaintiffs' claims for violation of the implied covenant of good faith and fair dealing, promissory estoppel, and Chapter 93A are entirely derivative of their contract claim, and Plaintiffs fail to demonstrate a likelihood of success on those claims for similar reasons.

The remainder of the preliminary injunction factors do not support an injunction. Plaintiffs' arguments as to the balance of the equities and the public interest is unsupported and ignores that the injunction is drawn so broadly as to preclude foreclosures on borrowers (including some who submitted affidavits with Plaintiffs' Motion) that have simply stopped

paying on their loans.  Equity cannot support an injunction in favor of borrowers who are making

no payments, who are not eligible for HAMP, who have not fulfilled obligations under their

TPPs, or who do not face foreclosure at all.  An injunction would also *discourage* servicers from

participating in HAMP, thus thwarting the very program under which Plaintiffs seek relief.

The Court should deny the Motion in its entirety.

## BACKGROUND

Plaintiffs filed their initial complaint almost eight months ago, on February 23, 2010, and

filed a First Amended Complaint on April 30, 2010.  Plaintiffs' Complaint alleges that BAC

failed to comply with the HAMP program, and contains claims for (1) breach of contract, (2)

breach of the implied covenant of good faith and fair dealing, (3) promissory estoppel, and (4)

violation of Chapter 93A.

BAC moved to dismiss Plaintiffs' First Amended Complaint on June 14, 2010, and that

motion is currently under submission.[1]

Plaintiffs waited approximately seven months from the filing of their initial complaint to

file their motion for a preliminary injunction on September 7, 2010, although the initial and

amended complaints (references to "Complaint" will hereafter be to the First Amended

Complaint) contained multiple allegations of improper foreclosure notices, and nothing material

has changed in Plaintiffs' individual circumstances since the Complaint was filed.  Only Fox

makes any attempt to claim that she is in imminent danger of foreclosure and that claim is

wrong.  The foreclosure sale on Fox's property was cancelled *prior to* Plaintiffs filing their

---

[1] On August 4, 2010, plaintiffs in *Isaac Mikhail and Marlen Mikhail v. Bank of America N.A. and BAC Home Loans Servicing, LP*, Civil Action No. 2:10-cv-3630(WHW)(CCC) (D. N.J.), filed a motion pursuant to 28 U.S.C. § 1407 ("Motion to Transfer") to coordinate or consolidate cases against Bank of America, N.A. and BAC Home Loans Servicing, LP, arising out of the performance of mortgage loan modifications and the administration of duties under HAMP.   These cases have now been consolidated with this one before this Court.

Motion.  Declaration of Gregory J. Higeons ("Higeons Decl.") ¶ 4; Declaration of Andrew S.

Harmon ("Harmon Decl.") ¶ 3; Declaration of James W. McGarry ("McGarry Decl.") ¶¶ 3-5.

### A.      The Home Affordable Modification Program.

In early 2009, the U.S. Treasury announced a national modification program intended to

help 3 to 4 million at-risk homeowners avoid defaulting on their mortgage loans by reducing

monthly payments.  Compl., Ex. 2 at 1 (HAMP Supplemental Directive 09-01 ("Supp. Dir. 09-

01")).  The relevant details of the HAMP program are discussed in detail in Defendants' Motion

to Dismiss and Defendants' Opposition to Plaintiffs' Motion for Conditional Class Certification.

For purposes of this Opposition, the following facts related to HAMP are most relevant:

- HAMP was designed to reduce defaulting borrowers' monthly mortgage payments to no more than 31% of monthly gross income.  Borrowers whose ratio is already equal to or below 31% are thus not qualified.  Proposed Modifications that do not pass the Net Present Value ("NPV") test (meaning losses from modifications are greater than losses from foreclosure) are similarly not qualified. Compl., Ex. 2 (HAMP Supp. Dir. 09-01) at 2, 4-6.

- Prior to June 2010, HAMP allowed servicers to provide TPPs to borrowers based *only* on their representations of income *without* verification.  Supp. Dr. 09-01 at 5 (Compl., Ex. 2).  The idea was to get immediate relief to borrowers who appeared eligible, and then later determine whether the borrower qualified for a permanent modification when her income representations could be tested using verifiable data.  *Id.* at 6 (verified income must show payment ratio greater than 31%).  This HAMP guidance was changed effective June 1, 2010 because the lack of verified income at the start unsurprisingly resulted in some borrowers being unqualified for HAMP once their income was verified.  HAMP Supp. Directive 10-01 at 1-3, 4, *at* https://www.hmpadmin.com/portal/docs/hamp_servicer/sd1001.pdf (last visited October 15, 2010).  Every named Plaintiff (including Fox) entered their TPP prior to the June 1 change.  Declaration of Keith R. Jones ("Jones Decl.") ¶¶ 9, 16, 19, 30, 33.

### B.      Named Plaintiffs Other Than Carmen Fox.

Plaintiffs' Motion is based almost exclusively on the allegations and submissions related

to Carmen Fox.  As such, BAC will not discuss the remaining named Plaintiffs in detail except to

note that:  (1) none of them claim to be in imminent danger of foreclosure; (2) all of them remain

living in their homes despite being in default on their loans; and (3) Plaintiffs Johnson, Anderson and Angelopoulos have *all* received permanent modifications from BAC, and Plaintiff Cabrera has received a permanent modification offer he has not yet accepted.  Jones Decl. ¶¶ 29, 35-36.  Indeed, no Plaintiff aside from Carmen Fox submits an affidavit in support of Plaintiffs' Motion, and no other Plaintiff provides anything to support Fox in seeking preliminary injunctive relief on behalf of the proposed "provisional class."

### C.      Carmen Fox.

Like all named Plaintiffs, Carmen Fox breached her loan agreement by defaulting on her payment obligations.  *See* Compl. ¶ 115.  Her loan had already been referred to foreclosure when BAC sent her a TPP on October 19, 2009.  *Id.* ¶¶ 116, 118.  Consistent with the HAMP directives in place at the time, Fox was provided a TPP based on unverified income of $3,540.  Jones Decl. ¶¶ 4, 10.  Fox's TPP payments were $1,097.40 ($3,540 x 31% = $1,097.40).  *See* Compl. ¶ 118; Jones Decl. ¶ 10.

At BAC's request, Fox submitted additional income documentation during the pendency of her trial plan.  Jones Decl. ¶ 11; *see also* Fox Decl. [Doc. 22-2] at ¶ 15.  The income documentation Fox submitted to BAC supported only $1,984.67 in income, not the more than $3,500 used to qualify her for the TPP.  Jones Decl. ¶¶ 12-13.  In order to meet HAMP's goal of reducing Fox's monthly payments to 31% of her income, her monthly payments would therefore have to be reduced to $615.25.  Jones Decl. ¶ 13.  To reach this result, BAC would have to forbear well more than $100,000 of the unpaid balance of her loan, disqualifying her from a HAMP modification.  Jones Decl. ¶ 13.  BAC informed Fox of this result in a letter dated May 6, 2010.  Jones Decl. ¶ 15.

5

To be certain that Fox would not have qualified based on her verified income during the trial plan had her NPV test been run then, rather than shortly thereafter, BAC re-ran the NPV test as of the last day of the trial plan, and Fox failed the NPV test then as well.  Jones Decl. ¶ 14.

The Motion alleges that Fox received a "verified income" HAMP TPP (PI Mot. at 4), citing to Fox's declaration.  Fox's declaration says nothing about receiving a "verified income" TPP, and she did not, as discussed above.  Jones Decl. ¶¶ 4, 9, 11.  As noted, HAMP guidance in effect at the time encouraged lenders to issue TPPs based on unverified income.  Fox's representation that she obtained a "verified income" TPP has no evidence to support it.

While BAC had already referred Fox's loan to foreclosure at the time she entered the TPP, it never went through with a foreclosure sale.  See Compl. ¶¶ 122-23; Fox Decl. [Doc. 22-2] ¶¶ 20-26.  HAMP guidance at the time prohibited foreclosure *sales* from going forward while a borrower was in a TPP, but did not prohibit pre-sale activity, including foreclosure notices.  TPPs explicitly recognize that "any pending foreclosure action will not be dismissed . . . ."  Jones Decl., Ex. A at 2 (§2(B)); *see also* Treasury Department, *MHA: Handbook for Servicers of Non-GSE Mortgages* (Version 2.0, Sept. 22, 2010) at 28, *available at* https://www.hmpadmin.com/portal/docs/hamp_servicer/mhahandbook_20.pdf (requiring only that servicer "not refer any loan to foreclosure or conduct a scheduled foreclosure sale" during pendency of trial plan); *id.* at 50 (suggested Treasury form notice to borrowers that explains that "we will continue the foreclosure process" and warns the borrower to "not ignore any foreclosure notices").

Indeed, Plaintiffs' argument and "evidence" as to the imminence of Fox's current foreclosure status is misleading.  Fox states on the first page of the Motion for Preliminary Injunction that her foreclosure sale has "been postponed – but not cancelled."  Plaintiffs' "evidence" that Fox's foreclosure is imminent consists of a statement in the Declaration of

Charles Delbaum, which purports to relate a conversation another of Plaintiffs' counsel, Kevin

Costello, had with "Defendants' Counsel." Delbaum Decl. ¶ 7. This triple hearsay statement is

that the "sale date is postponed, but that it may be rescheduled at anytime and is unlikely to be

postponed again." Delbaum Decl. ¶ 7. In fact, Fox's sale was cancelled, not postponed, and the

only counsel of record in this case to have discussed this issue with Mr. Costello so informed

him. McGarry Decl. ¶¶ 3-5; *see also* Higeons Decl. ¶ 4; Harmon Decl. ¶ 3. Because the sale has

been cancelled, it may not be rescheduled without re-starting the statutory notice of sale process.

Harmon Decl. ¶ 3.

## **STANDARD**

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be

granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Mazurek v.

Armstrong¸* 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted). It is a remedy

that is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 129 S.Ct. 365, 376

(2008). A preliminary injunction should not be granted if any doubt exists or is created in the

record regarding the merits of a Plaintiff's claim. *Comfort ex rel. Neumyer v. Lynn School

Comm.,* 100 F. Supp. 2d 57, 60 (D. Mass. 2000); *Fritz v. Arthur D. Little, Inc.,* 944 F. Supp. 95,

99 (D. Mass. 1996) ("Given the uncertain likelihood of success on the merits, a preliminary

injunction is inappropriate."). "The authority of the District Court Judge to issue a preliminary

injunction should be sparingly exercised." *Mass. Coalition of Citizens with Disabilities v. Civ.

Def. Agency & Office of Emergency Preparedness,* 649 F.2d 71, 76 n. 7 (1st Cir. 1981). *See also

Winter,* 129 S.Ct. at 381.

Plaintiffs seeking a preliminary injunction must presumptively establish *each* of the

factors required for injunctive relief: (1) without the preliminary relief, the plaintiff is likely to

suffer imminent and irreparable harm; (2) the plaintiff is likely to succeed on the merits of his or her claim; (3) the balance of equities tips in the plaintiff's favor, and (4) issuance of the requested injunction is in the public interest. *Winter,* 129 S. Ct. at 374; *Air Line Pilots Ass'n, Intern. v. Guilford Transp. Industries, Inc.,* 399 F.3d 89, 95 (1st Cir. 2005).

## ARGUMENT

I.   **PLAINTIFFS HAVE NOT MET THE BURDEN OF DEMONSTRATING THAT THE REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE SATISFIED.**

   A.   **Plaintiffs Face No Threat of Immediate Harm.**

   Anything less than a clear threat of immediate and irreparable harm will not support a preliminary injunction. *See Matos v. Clinton Sch. Dist.,* 367 F.3d 68, 74 (1st Cir. 2004) (affirming denial of preliminary injunction where plaintiffs' claim for relief "lacks immediacy … [and] record reflects no reason why that relief, if due, cannot await a full-dress trial"); *Rubacky v. Morgan Stanley Dean Witter Credit Corp.,* No. 04-1173, 2004 WL 1636911, *1 (1st Cir. July 23, 2004) ("In the absence of a real threat of immediate and irreparable harm, the district court appropriately declined to issue a preliminary injunction."). As the Supreme Court recently admonished, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter,* 129 S. Ct. at 375-76.

   None of the named Plaintiffs is in danger of immediate foreclosure. Fox is the only Plaintiff to even claim she is facing imminent foreclosure, and she is not. The foreclosure sale on Fox's property has been cancelled. Higeons Decl. ¶ 4; Harmon Decl. ¶ 3. No other named Plaintiff submits evidence of imminent foreclosure. Indeed, several of the named Plaintiffs have either accepted permanent modification agreements or been offered such modifications. As

such, Plaintiffs face no actual threat of imminent harm, and cannot obtain preliminary relief.

*Sierra Club v. Larson,* 769 F. Supp. 420, 422 (D. Mass. 1991) ("To establish irreparable harm

there must be an actual, viable, presently existing threat of serious harm.").[2]  Indeed, courts

routinely decline injunctions seeking to stay foreclosures that are not imminent.  *Matos*, 367 F.3d

at 74; *Rubacky,* 2004 WL 1636911 at *1 ("Although plaintiff's motion … sought to enjoin any

future foreclosure sale, there is no evidence that any future sale has been or will be scheduled

before the trial."); *Bray v. Bank of America,* No. 1:09-cv-075, 2010 WL 749789, *1-2 (D.N.D.

Mar. 2, 2010) (finding that threat of any irreparable harm was "slight" where attorney for

defendants assured plaintiff that no immediate steps would be taken to dispossess him from his

residence); *Peters v. Bank of America,* No. 10-cv-01382-MSK, 2010 WL 2682129, at *2 (D.

Colo. July 2, 2010) ("Without a showing that foreclosure proceedings have been commenced and

that a foreclosure sale has been scheduled, the plaintiff has not, and cannot show an imminent

injury sufficient to support preliminary injunctive relief."); *Cervantes v. Countrywide Home

Loans, Inc*., No. CV 09-517PHX-JAT, 2009 WL 1636169, at *4 (D. Ariz. June 10, 2009) ("The

mere *future* threat of foreclosure and eviction…fails to satisfy [the plaintiff]'s burden that he will

suffer irreparable harm if the Court fails to grant … the preliminary injunction he seeks");

*Muhammad v. HSBC Bank USA, N.A.,* No. 09-53, 2009 WL 256275, at *1 (S.D. Ala. Feb. 3,

2009) ("In light of the temporary cancellation of the foreclosure sale, plaintiff does not state a

prima facie case for preliminary injunctive relief.").  Accordingly, Plaintiffs cannot seek an

injunction either on their own account, or for others.[3]

---

[2] To be clear, BAC does not take the position that the Court should deny the Motion based on BAC's suspension of foreclosure sales related to review of foreclosure paperwork.  These issues are unrelated to this case and to Plaintiffs' Motion.

[3] No injunction can issue as to the putative provisional class as well because no class can be certified.  *See* Opp. to Mot. for Prov. Class Cert.  For the same reasons, Plaintiffs' completely unsupported request that the Court order BAC to give "notice" of the lawsuit to "class members" should be denied.  *See* Mot. for Prelim. Inj. at 1, 19-20.

Nor do the four affidavits submitted by additional borrowers who are not named Plaintiffs support a finding of class-wide imminent harm.  The Ayers, for example, claim that Bank of America has authorized the commencement of foreclosure proceedings, yet they admit that no foreclosure sale has ever been scheduled.  Ayers Decl. ¶ 14.  Nor do Denis Ingham and Eleanor Murphy or Brian Tirrell allege that a foreclosure sale has been scheduled on their properties.  That is because [no such sales have been scheduled.  Higeons Decl. ¶ 8, 11.  Indeed, Tirrell appears to be in continued discussions with BAC to obtain a permanent modification.  Tirrell Decl.  ¶ 21.  The foreclosure sale on Frederic Marino's home, originally scheduled for September 3 (Marino Decl. ¶  22) was postponed.  The upcoming sale has been postponed again until December, and BAC has received investor approval to extend that date further should the need arise.  Higeons Decl. ¶ 10.[4]

Plaintiffs simply have not shown, nor could they, that each and every person for whose benefit the injunction is sought faces imminent, irreparable harm.  The injunction purports to apply to all Massachusetts borrowers who entered into at TPP, made TPP payments and were not given a permanent HAMP modification or a written denial of eligibility on or before the modification effective date in the TPP.  Many of these borrowers face no harm at all because they are not even in the foreclosure process.  This may be true because they are current on their loans, have obtained a forbearance from BAC, or are involved in a bankruptcy or other court

---

[4] Foreclosures also do not automatically cause irreparable harm.  Although Plaintiffs argue that their properties are "unique," Mot. for Prelim. Inj. at 17-18, this fact alone does not justify injunctive relief, or else every defaulting borrower would qualify for a preliminary injunction. Courts frequently decline to find irreparable injury in cases involving residential real property, holding that monetary damages are a sufficient remedy.  See, e.g., *Holweg v. Accredited Home Lenders, Inc.*, No. 2:09-CV-1 TS, 2009 WL 29703, at *1 (D. Utah Jan. 5, 2009) (denying preliminary injunction because "[w]hile the sale of [Plaintiffs'] residence would clearly be disruptive to Plaintiffs' lives, such a disruption and any accompanying injuries are not irreparable, in that they could be quantified with relative ease, and an effective monetary remedy granted"); *Barrett v. Popular, Inc.*, No. C-07-0637-RSL, 2007 WL 1753539 (W.D. Wash. June 18, 2007) (because plaintiff could halt foreclosure by paying the amount owed, foreclosure would result in solely economic injury and not irreparable harm).  The same is true here.

case, or any number of other reasons.  It may also be true that many of these borrowers are or will soon be in the final stages of obtaining permanent loan modifications, such as Plaintiff Cabrera.  Further, foreclosures frequently are delayed substantially or canceled for a variety of reasons.  All such borrowers do not face harm that is both imminent and irreparable and Plaintiffs offer no evidence to the contrary.  As such, no preliminary injunction may issue. *Rubacky*, 2004 WL 1636911, at *1 (lack of evidence that future sale was scheduled before trial precluded issuance of preliminary injunction against foreclosure).[5]

**B.    Plaintiffs Have Failed to Demonstrate a Likelihood of Success on the Merits.**

Plaintiffs have no likelihood of success on the merits on any of their substantive claims. BAC presented a number of arguments on the merits of Plaintiffs' claims in its Motion to Dismiss and Supporting Memorandum, and it incorporates those arguments here.  But the Court need not decide the issues presented in BAC's motion in order to resolve Plaintiffs' Preliminary Injunction motion.  It is Plaintiffs' burden to demonstrate to the Court that they are *significantly* likely to succeed on the merits.

**1.    Plaintiffs Have No Private Right of Action Under HAMP.**

Plaintiffs are not entitled to preliminary injunctive relief because they do not have the right to privately enforce HAMP's terms.  *See Williams v. Geithner,* No. 09-1959, 2009 WL 3757380, *6 (D. Minn. Nov. 9, 2009); *Aleem v. Bank of America, N.A.,* No. EDCV 09-01812, 2010 WL 532330, *3-4 (C.D. Cal. Feb. 9, 2010) (no private right of action under HAMP); *Marks*, 2010 WL 2572988 at *5-6 ("[p]laintiff is precluded from asserting a private cause of action under the HAMP, even disguised as a breach of contract claim."); *Inman v. Suntrust*

---

[5] Indeed, the lack of imminent harm is perhaps best demonstrated by the fact that the original complaint filed in February (and the amendment in April) make repeated complaints of wrongful foreclosure notices, but plaintiffs chose to wait until September to file their motion.

*Mortgage, Inc.*, No. 10-cv-1031-AWI, 2010 WL 3516309, *2 (E.D. Cal. Sept. 3, 2010); *Dugger v. Bank of America*, No. 10CV00076, 2010 WL 3258383, *2 (E.D. Mo. Aug. 16, 2010); *Hart v. Countrywide Home Loans, Inc.*, No. 09-12088, 2010 WL 3272623, *5 (E.D. Mich. Aug. 19, 2010). As such, state laws cannot be used to create private rights of action where none exist under federal law. *Vazquez,* 2010 WL 3385347 at *1 ("The Court…cannot create a statutory or contract right where none exists."); *Aleem,* 2010 WL 532330 at *3-4 ("UCL cannot create a private right of action where none exists under the federal statute"); *Marks,* 2010 WL 2572988 at *5-6. A preliminary injunction to enjoin all foreclosures as to borrowers who entered into TPPs with BAC but who have not yet been offered a HAMP modification is thus improper, as it is nothing short of an attempt to enforce HAMP. *Hoffman v. Bank of America, N.A.,* No. C 10-2171 SI, 2010 WL 2635773, at *2 (N.D. Cal. June 30, 2010) (denying preliminary injunction to enjoin foreclosure where plaintiff "has not established that he is likely to succeed on the merits because . . . [he does not] have a private right of action under HAMP.")

2.     **Plaintiffs' Back-Door Attempt to Enforce HAMP Should Be Rejected.**

Though Plaintiffs contend that their claims arise strictly under their TPPs, and not HAMP, this argument is disingenuous. The very form and substance of the TPPs themselves was mandated by Treasury's HAMP guidelines. *See* Supp. Dir. 09-01 at 15; Compl., Ex. 2 ("Should a servicer decide to revise the HAMP documents or draft its own HAMP documents, it must obtain prior written approval from Treasury or Fannie Mae . . . ."). The Complaint reflects that this case is entirely dependent upon the provisions of HAMP. *See, e.g.*, Compl. ¶ 5 (alleging that "Defendant's actions thwart the purpose of HAMP"); *id.* ¶¶ 23-44 (alleging facts regarding the creation of and requirements under HAMP); *id* ¶ 42 & n.8 (referring to the detailed HAMP directives attached to the Complaint as providing the methodology for calculating modification

terms).  Indeed, Plaintiffs' purported expert requires ten pages of single-spaced text in his

declaration to explain to the Court what he thinks is important about HAMP.

That Plaintiffs seek to enforce HAMP through this lawsuit is further evidenced by the

fact that Plaintiffs' counsel has brought identical lawsuits, on the identical theories, against every

major loan servicer in the Commonwealth, and has filed nearly identical motions seeking to

preliminarily enjoin foreclosures by at least three of those servicers.[6]

The HAMP guidelines, however, are only binding on BAC by virtue of a contractual

arrangement:  BAC's Servicer Participation Agreement with Fannie Mae, as agent for the

Treasury Department.  HAMP may only be enforced against BAC, as Plaintiffs seek to do, if this

agreement is enforced.  More than a dozen federal courts addressing this issue have

concluded, however, borrowers such as Plaintiffs have no standing to enforce BAC's agreement

with the Treasury Department.[7]

Moreover, BAC and the Treasury set up a specific mechanism by which disputes would

be resolved.  In setting up this mechanism, BAC and the Treasury expressly provided that the

---

[6] *See Bosque v. Wells Fargo Bank, N.A.,* No. 4:10-cv-10311-FDS, filed 2/23/10, motion for preliminary injunction filed 9/15/10; *Durmic v. J.P. Morgan Chase Bank, N.A.,* No. 10-cv-10380-RGS, filed 3/3/10, motion for preliminary injunction filed 8/20/10; *Reyes v. IndyMac Mortgage Services, F.S.B.,* No. 10-cv-10389-NG, filed 3/4/10, voluntarily dismissed on 8/6/10; *Belyea v. Litton Loan Servicing, LLP,* No. 10-10931-GAO, filed 6/4/10.

[7] *See, e.g., Marks v. Bank of America, N.A.,* No. 03:10-cv-08039, 2010 WL 2572988, *5-7 (D. Ariz. June 22, 2010); *Vazquez v. Bank of America Home Loans, et al.,* No. 2:10-cv-00116, 2010 WL 3385347, *1 (D. Nev. Aug. 23, 2010); *Nguyen v. BAC Home Loan Services, LP,* No. 10-01712-RMW, 2010 WL 3894986, *4-6 (N.D. Cal. Oct. 1, 2010); *Hammonds v. Aurora Loan Servs., LLC,* No. 10-1025-AG, 2010 WL 3859069, *2-3 (C.D. Cal. Sept. 27, 2010); *Joern v. Ocwen Loan Servicing, LLC,* No. 10-0134-JLQ, 2010 WL 3516907, *5 (E.D. Wash. Sept. 2, 2010); *Wright v. Bank of America, N.A.,* No. CV 10-01723 JF, 2010 WL 2889117 (N.D. Cal. July 22, 2010); *Hoffman v. Bank of America, N.A.,* No. C 10-2171 SI, 2010 WL 2635773, *3-5 (N.D. Cal. June 30, 2010); *Zendejas v. GMAC Wholesale Mortgage Corp.,* No. 10-CV-00184, 2010 WL 2629899, *3-4 (E.D. Cal. June 29, 2010); *Simmons v. Countrywide Home Loans, Inc.,* No. 09-cv-1245, 2010 WL 2635220, *2-5 (S.D. Cal. June 29, 2010); *Simon v. Bank of America, N.A.,* No. 10-cv-00300, 2010 WL 2609436, *10 (D. Nev. June 23, 2010); *Burtzos v. Countrywide Home Loans,* No. 09-CV-2027W, 2010 WL 2196068, *2 (S.D. Cal. June 1, 2010); *Benito v. IndyMac Mortgage Servs.,* No. 2:09-CV-001218, 2010 WL 2130648, *7-8 (D. Nev. May 21, 2010); *Lucero v. Countrywide Bank N.A.,* No. 09cv1742, 2010 WL 1880649, *3-4 (S.D. Cal. May 10, 2010); *Villa v. Wells Fargo Bank, N.A.,* No. 10-cv-81, 2010 WL 935680, *2-3 (S.D. Cal. March 15, 2010); *Escobedo v. Countrywide Home Loans, Inc.,* No. 09-cv-1557, 2009 WL 4981618, *1-2 (S.D. Cal. Dec. 15, 2009).

only parties who could resolve disputes were Fannie Mae (as Treasury's agent) and BAC. Compl., Ex. 1, at 7 (§ 7).  And, importantly, legal action is only permitted under this mechanism if the parties have taken "all reasonable steps to resolve disputes internally."  *Id.*  There is good reason for both these provisions.  In order to achieve the larger HAMP goals of modifying 3 to 4 million mortgages, *see* Compl., Ex. 2, at 1, Treasury must have the cooperation of mortgage loan servicers, who participate voluntarily in the program, and who would be *dis*couraged if private Plaintiffs were to become HAMP's enforcement agent.  *Marks*, 2010 WL 2572988 at *5-7; *see also Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 299 (2d Cir. 1998) (rejecting plaintiffs' theory that they were third-party beneficiaries of contracts between landlords and housing authority in party because this "might severely discourage landlord participation in the Section 8 program by creating an open-ended liability for landlord-participants").  If Plaintiffs are permitted to enforce HAMP, as Plaintiffs seek here, Treasury's authority to determine how and when HAMP should be enforced would be usurped.  *Marks,* 2010 WL 2572988 at *4 ("Permitting these individual claims would undermine Freddie Mac's role as the compliance officer for the HAMP.").

### 3.      Plaintiffs are Unlikely to Succeed on Their Breach of Contract Claim.

#### i.      The TPPs Are Not Enforceable Contracts.

##### (a)      No valid consideration exists.

Plaintiffs have not demonstrated a significant likelihood of success on their breach of contract claim.  The breach of contract claim is not likely to succeed because Plaintiffs cannot articulate any legally cognizable form of consideration supporting the purported agreement on which their claim is based.  "A contract must have consideration to be enforceable and '[i]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor.'"

14

*Neuhoff v. Marvin Lumber & Cedar Co.,* 370 F.3d 197, 201 (1st Cir. 2004) (citation omitted).

To constitute consideration, "legal detriment" entails "giving up something which immediately

prior thereto the promisee was privileged to retain, or doing or refraining from doing something

which he was then privileged not to do, or not to refrain from doing." *Graphic Arts Finishers,*

*Inc. v. Boston Redevelopment Auth.,* 255 N.E. 2d 793, 795 (Mass. 1970) (quoting *Williston on*

*Contracts* §102A (3d ed. 1957)).

Here, the TPP was not supported by consideration for the simple reason that Plaintiffs

already had a legal obligation to make payments on their existing mortgage loans.  Compl. ¶¶ 48-

49, 72-73, 93-94, 112, 128-129, 146 (alleging existence of Plaintiffs' mortgage loans).  Plaintiffs

argue that because they "made payments required by their TPP Agreements in an amount and

manner *different* from that required by their pre-existing loan documents," this alteration is

sufficient to establish consideration.  Mot. for Prelim. Inj. at 12.  Plaintiffs further assert that

consideration is present because Plaintiffs "complied with the other terms of their TPP

Agreements, by providing extensive financial information, making binding representations

concerning their personal circumstances and agreeing to undergo credit counseling, all of which

actions were requested by BAC and none of which were pre-existing legal obligations." *Id.* at

12-13.

Plaintiffs' consideration argument is highly unlikely to succeed.  First, making *lower*

monthly payments than Plaintiffs were already obligated to make is not valid consideration.

"The well-settled rule … that performance of a pre-existing legal duty that is neither doubtful nor

subject to honest and reasonable dispute is not valid consideration where the duty is owed to the

promisor." *In re Lloyd, Carr & Co.*, 617 F.2d 882, 890 (1st Cir. 1980).  Plaintiffs had a pre-

existing legal obligation to make payments as required by their original loan agreements. *First*

15

*Colonial Bank for Sav. v. Webster,* No. 92-6679B, 1993 Mass. Super. LEXIS 87, at *5 (Mass. Super. Ct. Oct. 12, 1993) ("The maker of a promissory note is obligated to pay the note in accordance with its terms").  As Plaintiffs admit, participation in the TPPs did not relieve Plaintiffs of their obligation to repay their loans; rather, it entitled them to temporarily make lower payments on their loans while remaining in their homes.  Mot. for Prelim. Inj. at 12; *see also* Jones Decl., Ex. A, at 2 (§ 2(A)).  As such, paying less than what is already due does not constitute valid consideration.  *See* 3 *Williston on Contracts* §7:21 (4th ed. 2008) ("When the consideration is of the same nature as the thing promised and is equal or smaller in amount the courts have held that no consideration exists."); *Cohoon v. Citizens Bank,* No. 002774, 2000 WL 33170737, at *3 (Mass. Super. Ct. Nov. 11, 2000) ("an agreement to give and accept in full discharge of this indebtedness an amount less than that which was admittedly due would not be binding and would not prevent the creditor from enforcing payment of the balance of the debt.").

Plaintiffs' assertion that transmitting financial information and agreeing to undergo credit counseling are sufficient consideration to form a binding contract is similarly unlikely to carry their burden on the merits because these actions were simply conditions to participation in the TPP.  "A condition of a promise" is not consideration if "a reasonable person … would not understand that performance of the condition was requested as the price or exchange for the promise." 3 *Williston on Contracts* § 7:18 (4th ed. 2008).  The transmittal of financial information was required for BAC to analyze eligibility for, and the terms of, a possible permanent modification reducing Plaintiffs' monthly mortgage payments.  Moreover, the Complaint itself does not allege that BAC bargained for Plaintiffs' financial information as the consideration for the offer of a permanent modification.  Nor could it.  *See* 3 *Williston on Contracts* § 7:18 (A condition is likely not intended as consideration unless "the happening of

16

the condition will benefit the promisor."). Plaintiffs simply cannot establish consideration for the TPPs. At a minimum, the substantial and long-standing common law under the pre-existing duty rule and contractual conditions discussed above make clear that Plaintiffs have not made a substantial showing of a probability of success on the merits.

### ii.  The TPPs are, at most, agreements to agree.

As set forth in BAC's Motion to Dismiss, the TPPs themselves do not contain sufficient terms to be a binding contract, and are, at most, "agreements to agree" that cannot be enforced against BAC. *Giuliano v. Nations Title, Inc.,* No. 96-2331, 1998 WL 45459, *4 (1st Cir. Jan 23, 1998) (an agreement to agree imposes no obligation on the parties thereto). *See* Motion to Dismiss at 11-12. The TPPs do not set forth the essential terms of the permanent modifications sought by Plaintiffs, and themselves recognize that Plaintiffs may not receive any permanent modification after the documentation related to their loans has been considered. *See e.g.* Jones Decl., Ex. A at 2 (Section 2(F) of TPP, providing that TPP can be terminated for a number of reasons). Moreover, even if the TPPs were to eventually result in permanent loan modifications, the TPPs themselves contain no description of what the terms of those modifications would look like. There is no interest rate, monthly payment, total indebtedness – nothing. It is difficult to see how Plaintiffs will succeed on the merits of their contract claim when the TPPs are missing all the critical contract terms.. *See* Motion to Dismiss at 12; Reply at 3-4.

### iii.  Plaintiffs have not identified cognizable damages.

Plaintiffs have identified no cognizable monetary harm to them as a result of the alleged breach, nor can they. They state that had their modifications been granted, they no longer would be in default, that all existing arrearages would have been capitalized, late fees would have been forgiven, and they would have had affordable payments going forward. Mot. for Prelim. Inj. at 13. Yet, as described in the Motion to Dismiss, as a result of the TPPs, Plaintiffs' monthly

17

payments were substantially reduced from what they would otherwise have been obligated to pay under the terms of their original loans.  Further, three of the Plaintiffs have been offered, and have already accepted, permanent modifications.  Another has been made an offer but has not yet accepted.  Jones Decl. ¶ 29.  Plaintiffs assert that they have incurred "foreclosure-related fees and charges," Mot. for Prelim. Inj. at 14, yet they have put forth no *evidence* of what these costs are, if in fact they have been incurred.  Plaintiffs' "expert" Wyatt having an "understanding" of the amount of foreclosure costs "based on conversations with Plaintiffs' counsel" (Wyatt Decl. at 17) is not evidence.  Plaintiffs' claims that they have lost opportunities to pursue other means of avoiding foreclosure, Mot. for Prelim. Inj. at 14, are unpersuasive, as nothing currently prevents Plaintiffs from taking these steps.

### iv.   Fox has not complied with her obligations under the TPP.

Fox also cannot prevail on her individual breach of contract claim, thus demonstrating a lack of likelihood of success on the merits.  Although no discovery has yet occurred, the record that Defendants have been able to adduce reveals that Fox did not satisfy her obligations under the TPP.  As noted, Fox commenced making TPP payments which were calculated based upon non-verified income of $3540.  Jones Decl. ¶ 10.  When Fox later submitted income documentation, her verifiable income was $1,984 per month, far less than the amount used to qualify her for the TPP.  Jones Decl. ¶¶ 11-12.  The amount of her actual income caused the loan to "fail" the NPV test and disqualified her from receiving a HAMP modification.  Jones Decl. ¶¶ 13-14.[8]  Moreover, the failure to supply all supporting income documentation is itself a breach of Fox's representations under the TPP.

---

[8] Whether the additional borrowers submitting affidavits in support of Plaintiffs' Motion are eligible for injunctive relief is not at issue in this Motion, as they are not parties to this action, and no class has been certified.  *Brown v. Trustees of Boston Univ.,* 891 F.2d 337, 361 (1st Cir. 1989); *Zepeda v. U.S.,* 753 F.2d 719, 727-28 & n.1 (9th Cir. 1983).  Nevertheless, the borrowers submitting affidavits likewise are not eligible for injunctive relief.  As an

**4.     Plaintiffs are Unlikely to Succeed on Their Claim for Breach of the Covenant of Good Faith/Fair Dealing.**

For all the reasons set forth in the Motion to Dismiss, Plaintiffs fail to demonstrate that they have a significant likelihood of succeeding on their claim for breach of the implied covenant of good faith and fair dealing.  First and foremost, they cannot establish the existence of the required contract for a good faith and fair dealing claim because the TPPs are not enforceable contracts.  *See Christensen v. Kingston School Comm.,* 360 F. Supp. 2d 212, 226 (D. Mass. 2005).  As with the breach of contract claim, Plaintiffs have established no contract and no damages, and thus cannot recover on the good faith and fair dealing claim.

Moreover, Plaintiffs have not established any conduct by BAC that would entitle them to recover under a good faith and fair dealing claim.  Plaintiffs conclusorily state that BAC has breached the implied covenant because it has "made it extremely difficult to secure the benefits of their TPP agreements."  Mot. for Prelim. Inj. at 16.  Yet this assertion is belied by the fact that several of the Plaintiffs have been offered permanent modifications.  Indeed, Anderson and Angelopoulos were offered permanent HAMP modifications *before* they sued BAC.  Johnson has accepted a permanent modification and dismissed her claims.  Despite being HAMP ineligible, Cabrera has been offered a permanent modification which would reduce his interest rate from 6.125% to 2% and cut his monthly principal and interest payments to $697.21.  Jones Decl. ¶ 29.

---

example, Frederic Marino had a mortgage payment under 31%, thus disqualifying him for HAMP.  Jones Decl. ¶46.
He also has admitted that he made no monthly payments during the months of July, August, and September 2010,
and yet he still seeks a stay of foreclosure.  Marino Decl. ¶ 20.

**5.      Plaintiffs are Unlikely to Succeed on Their Claim for Promissory Estoppel.**

Plaintiffs have similarly failed to establish any likelihood of prevailing on their alternate claim for promissory estoppel.  Plaintiffs assert that absent "enforcement of BAC's promises, Plaintiffs will have spent time, money and resources under TPP Agreements in vain."  Mot. for Prelim. Inj. at 14.  This assertion must fail, as Plaintiffs have failed to establish that they have suffered damages in reliance on the defendants' promise.  *Veranda Beach Club Ltd. Partnership v. Western Surety Co.,* 936 F.2d 1364, 1381 n. 10 (1st Cir. 1991) (citing *Hall v. Horizon House Microwave, Inc.,* 506 N.E. 2d 178, 184 (Mass. App. Ct. 1987)).

Plaintiffs who have actually obtained or been offered permanent modifications (Johnson, Anderson, Angelopoulos, Cabrera), have no claim for promissory estoppel.  *Id.*  Moreover, the sole harm alleged is that Plaintiffs spent money by making mortgage payments—money they assert they could have reserved for other uses.  But Plaintiffs were already obligated to pay substantially more than they did under their TPPs.  As a result of their reduced monthly payments, Plaintiffs were able to free up hundreds of dollars per month "for other uses, such as the payment to a bankruptcy attorney to avoid foreclosure or a down payment on a rental unit." *See* Mot. for Prelim. Inj. at 14.  Plaintiffs are still fully capable of filing for bankruptcy or selling their homes if they wish.  Because Plaintiffs have failed to identify a cognizable detrimental change in their position as a result of any allegedly broken promise, they are unlikely to prevail on a claim for promissory estoppel.

**6.      Plaintiffs' Chapter 93A Claim Cannot Support the Requested Injunction.**

Nor are Plaintiffs likely to succeed on their claim that BAC's conduct was "unfair and deceptive under M.G.L.93A and its applicable regulations."  Mot. for Prelim. Inj. at 14-15. Their claim is that BAC's failure to offer Plaintiffs HAMP modifications constitutes conduct in

violation of various sections of the statute.   *Id.* at 15-16.  Plaintiffs are not likely to succeed on

the merits in the first instance because they failed to satisfy the 93A demand letter requirement.

M.G.L.  93A, § 9(3).  Moreover, Plaintiffs are unlikely to succeed on their 93A claim because it

is completely derivative of their contract claim.  *See Park Drive Towing, Inc. v. City of Revere,*

809 N.E. 2d 1045, 1050 (Mass. 2004) (where  claim was "derivative of [plaintiff's] breach of

contract claim," the Chapter 93A claim "must fail" "[i]n light of our conclusion that no contract

existed between the parties"); *Pimental v. Wachovia Mortg. Corp.,* 411 F. Supp. 2d 32, 40 (D.

Mass. 2006).  Plaintiffs' Motion makes clear that the alleged bases of the Chapter 93A claim are

derivative of the breach of contract claim:

> "BAC has … fail[ed] to offer Plaintiffs Home Affordable Modifications when they
> complied with their TPP Agreements."  Mot. for Prelim. Inj. at 15.

> "BAC …[strung] Plaintiffs along when they should have received a Home Affordable
> Modification the month after they made their last Trial Plan Payment…" *Id.* at 15-16.

> "BAC… repeatedly scheduled foreclosure sales on Ms. Fox's and others' homes when
> they otherwise would have been able to avoid foreclosure had they received the Home
> Affordable Modifications to which they were entitled." *Id.* at 16.

The core of Plaintiffs' Chapter 93A claims is their alleged entitlement to receive a permanent

loan modification under HAMP pursuant to the TPPs.  Those allegations are wholly derivative of

their contract claim and, as discussed above, do not support a likelihood of success on this claim.

### C.      The Equities Do Not Support an Injunction.

The equitable balance of harms and public interest factors do not favor an injunction.

Because there is no pending foreclosure sale for Fox, the hardship to her is minimal or

nonexistent.  Plaintiffs present no other evidence of a HAMP qualified borrower facing imminent

foreclosure.  As such, they fail to demonstrate any hardship by the failure to issue an injunction.

Plaintiffs also ignore that the injunction is written so broadly that it necessarily sweeps in

borrowers who are not complying with their TPP obligations or have otherwise stopped paying

on their loans.  Marino is a prime example.  He has stopped making payments altogether.

Marino Decl. ¶ 20.  The broad injunction Plaintiffs seek would result in other borrowers taking

the same route as Marino, having little incentive to make their payments.  There is no

corresponding offer in Plaintiffs' Motion to make loan payments if injunctive relief is granted.

This is hardly equitable.  *See Vazquez v. Bank of America Home Loans,* No. 10-CV-2010 WL

3385347, at 2 (D. Nev. Aug. 23, 2010) (denying motion to preliminarily enjoin foreclosures of

borrowers who met minimum criteria of HAMP, noting that "the harm to Defendants if the

injunctive relief sought by Plaintiffs were granted would require Defendants to forestall

foreclosure where Plaintiffs have failed to pay their current mortgage obligations.").[9]

Nor does the public interest favor an injunction.  As noted, the relief sought is so broad

that it necessarily includes in its scope an injunction in favor of borrowers who do not qualify for

a permanent HAMP modification.  As such, the requested injunction would discourage mortgage

servicers' voluntary participation in HAMP.  This is against the public interest, which strongly

*encourages* voluntary participation in HAMP.  *See* Mot. for Prelim. Inj. at 19 (referring to the

"public purposes" embodied in the Obama Administration's HAMP initiatives).

## II.     IF THE INJUNCTION IS GRANTED, ALL BORROWERS WHO WANT ACCESS TO THE RELIEF SHOULD BE REQUIRED TO KEEP THEIR LOAN CURRENT, AND PLAINTIFFS MUST POST A SUBSTANTIAL BOND.

If the requested preliminary injunction is granted, the court should provide it only on two

conditions—the borrowers should be directed to keep their loans current, and they should post a

bond.

---

[9] As BAC noted in the Opposition to the Certification Motion, no discovery has yet taken place. But certainly if discovery were to reveal that any borrower made misrepresentations on his HAMP applications or in his TPP, it would be inappropriate to provide that borrower with equitable relief.

### A.      The Loans Should be Paid Currently.

All borrowers who seek to stop foreclosures on their properties should be required to keep their loans up to date and pay taxes and insurance due.  This is particularly important with respect to taxes and insurance and loan interest, which in most instances are due to be paid over by BAC to a third party taxing authority, insurance provider, or loan investor.  There is no reason in equity why defendants should be required to shoulder those expenses.

### B.      A Substantial Bond is Required.

The Court also should order Plaintiffs and their counsel to post a bond.  Fed. R. Civ. P. 65(c); *Global Naps, Inc. v. Verizon New England, Inc.,* 489 F.3d 13, 23 (1st Cir. 2007).  Rule 65(c) states that "[t]he court may issue a preliminary injunction … order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.").  Indeed, should a wrongful injunction enter, the only protection BAC may have is the execution of an injunction bond. *Global Naps, Inc.,* 489 F.3d at 23 ("there is a rebuttable presumption that a wrongfully enjoined party is entitled to have the security executed so as to recover provable damages up to the amount of the security.").

Except in rare circumstances not presented here, posting of a bond is a mandatory requirement for every injunction issued under the Rules.  *Id.* ("[A] district court must have a good reason to depart from the preference for recovery of security granted under Rule 65(c)).").  Alternatively the Court should deny the Motion if Plaintiffs are unwilling to protect BAC against the damages it will incur if an injunction is improvidently granted.  *See Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 379 (5th Cir. 2008) (where plaintiffs stated they were unable to post bond, district court properly denied motion for preliminary injunction).  A bond should thus be imposed in a substantial amount.  *Global Naps, Inc.,* 489 F.3d at 21-22.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should deny Plaintiffs' Motion for a Preliminary Injunction.

Dated:  October 15, 2010

Respectfully submitted,
BAC Home Loans Servicing, L.P.,
By its attorneys,

/s/ James W. McGarry

James W. McGarry (BBO No. 633726)
jmcgarry@goodwinprocter.com
Mark Tyler Knights (BBO No. 670991)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 15, 2010.

<u>/s/ James W. McGarry</u>