UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PATRICIA JOHNSON, FAUSTO CABRERA, VELLYN ANTONELLI, CARMEN FOX, MARK ANGELOPOULOS, DIANE ANDERSON, JAMES COOLEY, AND MARGARET COOLEY, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

BAC HOME LOANS SERVICING, LP, a subsidiary of BANK OF AMERICA, N.A.,

Defendant.

Civil Action No. 10-10316 - RWZ

## DECLARATION OF KEITH R. JONES

I, Keith R. Jones, state as follows:

1.      I am a Senior Operations Project Analyst for BAC Home Loans Servicing, LP ("BAC"). I have been employed by BAC since August 2008, and have served in my current position since April 2010. In this role, I am responsible for, among other things, researching and reviewing BAC's records regarding the mortgage loans it services, including BAC's records regarding the Home Affordable Modification Program ("HAMP"). As a part of my job, I have become familiar with BAC's usages and practices regarding the servicing and modification of mortgage loans, and am able to interpret and explain BAC's servicing records, including records related to HAMP.

2. I have reviewed and analyzed BAC's servicing records for the named Plaintiffs in this action and for the other borrowers who have submitted affidavits in support of Plaintiffs' motions. This declaration is made based on personal knowledge obtained through my work at BAC, including my review of those borrowers' records and my discussions with other employees. If called as a witness, I could and would testify to the following facts.

3. Under HAMP, borrowers who meet certain threshold requirements may be eligible to have their mortgage loans permanently modified. If a borrower meets the threshold requirements – i.e., the loan is a first lien mortgage secured by a one- to four-unit property, the property is the borrower's principal residence, the loan is delinquent or default is reasonably foreseeable, and the current unpaid balance on the loan does not exceed certain amounts – then loan servicers participating in HAMP must consider the loan for a modification.

4. At the time that the named Plaintiffs in this action and the other borrowers who have submitted affidavits in support of Plaintiffs' motion were considered for HAMP modifications, loan servicers such as BAC could give borrowers trial modifications (Trial Period Plans, or "TPPs") under HAMP based on their verbal representation of their monthly income. BAC regularly did so. During the trial period, BAC would then collect income documentation to verify the true amount of the borrower's monthly income.

5. A TPP reduces a borrower's monthly mortgage payments to 31% of the borrower's represented monthly income for a trial period. Under the HAMP guidelines, a servicer must include payments for taxes and insurance premiums in these 31% payments. These tax and insurance payments are escrowed (referred to hereafter as "escrow payments") and paid to third parties by BAC. The remainder of the 31% payment is used to pay principal and interest on the loan.

6.  A borrower who has received a trial modification may receive a permanent modification only if (a) the borrower makes timely trial payments; (b) the borrower provides all documentation necessary to verify his or her income (and certain other required documentation); (c) the borrower's verified income shows that the borrower's monthly payments under the original loan agreement exceed 31% of his or her gross monthly income; (d) the borrower's monthly payments can be reduced to 31% of his or her gross monthly income without resulting in a negative Net Present Value (i.e., it would cost more to modify the loan than to foreclose), forbearance of greater than 30% of the unpaid balance of the loan, or a loan-to-value ratio of less than 100%; (e) all the representations made by the borrower in the TPP continue to be true; and (f) all the original eligibility requirements for HAMP continue to be met.

7.  The calculation of whether a borrower's monthly payment exceeds 31% of his or her gross monthly income is based upon specified factors under the HAMP guidelines. For example, under HAMP Supplemental Directive 09-01, principal, interest, property taxes, hazard insurance, flood insurance, condominium association fees and homeowner's associations fees are all included in the monthly payment. Conversely, Supplemental Directive 09-01 states that mortgage insurance premium payments or payments due to holders of subordinate liens are not included in payment calculations.

8.  Each of the named Plaintiffs and the other borrowers who have submitted affidavits was sent a TPP using a Form 3156.[1] A true and correct copy of an uncompleted Form 3156 is attached hereto as Exhibit A.

---

[1] Form 3156 was discontinued as of March 2010. Since that time, borrowers have no longer been sent TPPs using that form, but are notified of their eligibility for TPPs by letter.

*Plaintiff Carmen Fox*

9. Carmen Fox's mortgage loan is serviced by BAC. Under the terms of her original mortgage and note, her interest rate was 6.875%, and her monthly payments were $1,756.45. On October 19, 2009, Fox was sent a TPP, which she signed on November 24, 2009, and returned to BAC. A true and correct copy of Fox's signed TPP is attached hereto as Exhibit B.

10. As shown on the second page of Exhibit B, Fox's TPP payment amounts were $1,097.40. The gross monthly income amount used to calculate this payment amount was $3,540.00.

11. At BAC's request, Fox submitted additional income documentation while her TPP was pending. The income documentation that Fox submitted to BAC indicated that her actual income was $458.00 per week in unemployment benefits.

12. BAC's records reflect that Fox did not provide BAC with documentation that verified any additional sources of income. Fox's verifiable income of $458.00 per week resulted in total monthly income of $1,984.67, which was far less than the $3,540.00 that had been used to determine Fox's eligibility for a TPP.

13. Based upon Fox's verifiable monthly income of $1,984.67, Fox's monthly mortgage payments would need to be reduced to $615.25 in order to meet HAMP's goal of reducing Fox's monthly payments to 31% of her monthly income. Because Fox's escrow payments are $363.24, Fox's monthly payments of principal and interest would have to be lowered to $252.01 in order to reach this result, and BAC would have to forbear $149,213.73 of the unpaid balance of Fox's loan. The total amount of Fox's unpaid balance was $232,432.48. In other words, in order to achieve an affordable payment for Fox under the HAMP guidelines, BAC would have to forbear over 64 % of the total unpaid balance of her loan.

14.     Furthermore, based upon Fox's verifiable monthly income of $1,984.67, forbearance of over 64% of the total unpaid balance of her loan would have been required as of March 1, 2010, the "Modification Effective Date" identified on page 2 of Exhibit B.

15.     BAC informed Fox of her ineligibility for HAMP in a letter dated May 6, 2010. A true and correct copy of that letter is attached hereto as Exhibit C.

*Plaintiff Vellyn Antonelli*

16.     Plaintiff Vellyn Antonelli's mortgage loan is serviced by BAC. Under the terms of her original mortgage and note, her interest rate was 7.125%, and her monthly payments were $2,462.68. On July 28, 2009, Antonelli was sent a TPP. Antonelli signed the TPP on August 3, 2009, and returned it to BAC. A true and correct copy of the TPP signed by Antonelli is attached hereto as Exhibit D.

17.     As shown on the second page of Exhibit D, Antonelli's TPP payment amounts were $1,148.79. The gross monthly income amount used to calculate this payment amount was $3,705.00.

18.     At BAC's request, Antonelli submitted additional income documentation while her TPP was pending. The income documentation that Antonelli submitted to BAC showed actual monthly income of only $1,311.00. As a result, to achieve HAMP's goal of reducing Antonelli's payments to 31% of her verified income, her monthly payment would have to have been reduced to $406.40. However, Antonelli's escrow payment is $473.35. As a result, Antonelli's adjusted monthly payments would not even be able to cover her monthly escrow, and in order to achieve the target payment amount under HAMP, BAC would be required to forbear the entire unpaid principal balance of Antonelli's loan. BAC would also be required to forbear Antonelli's current delinquent interest and taxes.

5

*Plaintiff Fausto Cabrera*

19. Plaintiff Fausto Cabrera's mortgage loan is serviced by BAC. Under the terms of his original mortgage and note, his interest rate was 6.125%, and his monthly payments were $1,245.60. On May 20, 2009, Cabrera was sent a TPP. A true and correct copy of the TPP sent to Cabrera on that date is attached hereto as Exhibit E.

20. Cabrera signed his TPP on May 20, 2009, and returned it to BAC. A true and correct copy of Cabrera's signed TPP is attached hereto as Exhibit F.

21. As shown on the second page of Exhibit F, Cabrera's TPP payment amounts were $1,012.84. The gross monthly income amount used to calculate this payment amount was $3267.23.

22. As shown on page 5 of Exhibit E, the TPP was sent to Cabrera along with a checklist that enumerated each of the items that Cabrera needed to submit in order to be evaluated for a permanent modification under HAMP. That checklist specifically informed Cabrera that if he was self-employed, he needed to return a copy of his "most recent quarterly or year-to-date profit/loss statement." Cabrera did not submit a profit/loss statement to BAC when he returned his TPP.

23. During the course of reviewing Cabrera's income documentation, BAC learned that Cabrera was self-employed. As a result, on January 12, 2010, BAC sent a letter to Cabrera requesting that he submit a profit/loss statement and various other documentation. A true and correct copy of the January 12, 2010 letter is attached hereto as Exhibit G.

24. Cabrera did not submit a profit/loss statement in response BAC's January 12, 2010 letter, and BAC again requested a profit/loss statement from Cabrera on February 25, 2010. A true and correct copy of the February 25, 2010 letter is attached hereto as Exhibit H.

25. Cabrera did not submit a profit/loss statement in response to BAC's February 25, 2010 letter, and BAC again requested a profit/loss statement from Cabrera on March 2, 2010. A true and correct copy of the March 2, 2010 letter is attached hereto as Exhibit I.

26. Cabrera finally submitted a 2009 profit/loss statement for his business, CNC Autowerks, on March 11, 2010. A true and correct copy of the profit/loss statement submitted by Cabrera on that date is attached hereto as Exhibit J.

27. As shown in Exhibit J, the net income from Cabrera's business in 2009 was $103,256.21. As 50% owner of his business, Cabrera's share of this net income was $51,628.10, or $4,202.34 per month. This was more than the amount that had been used to determine his eligibility for the TPP.

28. BAC sent Cabrera a letter informing him of his ineligibility for a HAMP modification in June 2010. A true and correct copy of that letter is attached hereto as Exhibit K.

29. Despite his ineligibility for a HAMP modification, on September 30, 2010, BAC sent Cabrera a letter offering him a separate permanent modification. Cabrera has yet to accept this offer.

*Plaintiffs James and Margaret Cooley*

30. BAC became the servicer of Plaintiff James and Margaret Cooley's mortgage loan on March 1, 2010. Before BAC became the servicer of the Cooleys' loan, the servicer was Wilshire Credit Corporation ("Wilshire"). The Cooleys received a TPP from Wilshire prior to the transfer of servicing.

31. Due to the transfer of servicing, BAC did not have the documentation necessary to evaluate the Cooleys' eligibility for a permanent HAMP modification. BAC requested and received that documentation from Wilshire and the Cooleys.

32.     Now that it has received documentation verifying the Cooleys' income, BAC is in the process of evaluating them for a permanent HAMP modification.

*Plaintiffs Mark Angelopoulos and Diane Anderson*

33.     BAC services the mortgage loan of Plaintiffs Mark Angelopoulos and Diane Anderson. Under the terms of their original mortgage and note, their interest rate was 5.750%, and their monthly payments were $1,705.78. Anderson and Angelopoulos were sent a TPP on June 22, 2009, which they signed and returned to BAC.

34.     To verify Anderson's and Angelopoulos' income during the pendency of their TPP, BAC requested additional documentation from them. After Anderson and Angelopoulos provided this documentation, BAC was able to determine their eligibility for a permanent HAMP modification.

35.     On April 30, 2010, BAC sent Anderson and Angelopoulos a letter offering them a permanent HAMP modification. Anderson and Angelopoulos accepted the permanent HAMP modification by signing and returning it to BAC. A true and correct copy of Anderson's and Angelopoulos' signed permanent HAMP modification is attached hereto as Exhibit L.

36.     Anderson's and Angelopoulos' loan has been permanently modified under HAMP. As shown on page 3 of Exhibit L, their interest rate has been reduced to 2%, and their monthly payments have been reduced to $1,310.94.

*Brian Tirrell*

37.     Brian Tirrell's mortgage loan is serviced by BAC. Under the terms of his original mortgage and note, his interest rate was 7.350%, and his monthly payments were $2,536.29.

38. BAC sent Tirrell a TPP on July 17, 2009. Tirrell signed the TPP on August 5, 2009, and returned it to BAC. A true and correct copy of Tirrell's signed TPP is attached hereto as Exhibit M.

39. As shown on page 2 of Exhibit M, Tirrell's TPP payment amounts were $1,410.50, and the due dates for his payments were August 16, 2009; October 1, 2009; and November 1, 2009.

40. According to BAC's records, Tirrell made payments under the Trial Period Plan on August 21, 2009; September 23, 2009; and October 30, 2009.

41. On May 21, 2010, BAC sent Tirrell a letter informing him that he would not receive a permanent modification under HAMP.

*Frederic Marino*

42. Frederic Marino's mortgage loan is serviced by BAC. Under the terms of his original mortgage and note, his interest rate was 6.875%, and his monthly payments, excluding mortgage insurance premium payments, were $1,806.88. On July 6, 2009, Marino was sent a TPP. Marino signed his TPP on July 13, 2009, and returned it to BAC. A true and correct copy of Marino's signed TPP is attached hereto as Exhibit N.

43. I have reviewed the affidavit submitted by Marino in this action. I understand that he claims that his monthly mortgage payments exceed 31% of his gross monthly income and that BAC incorrectly denied his permanent modification because it calculated his payments as less than 31% of his gross monthly income.

44. At BAC's request, Marino submitted additional income documentation while his TPP was pending. The income documentation that Marino submitted to BAC indicated that his gross monthly income was $5,831.00. Marino's monthly payments, excluding mortgage

9

insurance premium payments, were $1,806.88. Thus, his monthly payments were 30.9% of his gross monthly income ($1,806.88 ÷ $5,831.00).

45. The higher "housing debt" of $1,926.13 that Marino references in his affidavit can only be reached if one includes Marino's private mortgage insurance payment of $105.16 in "housing debt." However, under Supplemental Directive 09-01, the HAMP guideline in place when Marino was evaluated for HAMP eligibility, a borrower's monthly mortgage payment does not include mortgage insurance premium payments.

46. Because Marino's monthly mortgage payment was already less than 31% of his gross monthly income, he was ineligible for a permanent modification under HAMP because BAC could not reduce his payment any further. BAC sent Marino a letter informing him of his ineligibility on June 2, 2010. A true and correct copy of the June 2, 2010 letter is attached hereto as Exhibit O.

*Denis Ingham and Eleanor Murphy*

47. BAC services the mortgage loan of Denis Ingham and Eleanor Murphy. Under the terms of their original mortgage and note, their interest rate was 6.375%, and their monthly payments were $1,535.53. On September 25, 2009, Ingham and Murphy were sent a TPP. Ingham and Murphy signed their TPP on September 28, 2009, and returned it to BAC. A true and correct copy of the signed TPP is attached hereto as Exhibit P.

48. As shown on page 2 of Exhibit P, Ingham and Murphy's TPP payment amounts were $667.58. The gross monthly income amount used to calculate this amount was $2,153.48.

49. Ingham and Murphy submitted additional income documentation while their TPP was pending. The income documentation that Ingham and Murphy submitted to BAC indicated that their actual monthly income was $2,669.89, consisting of monthly social security payments

of $1,115.40 for Murphy and $1,473.10 for Ingham, as well as retirement benefits of $81.39 per month for Ingham. This was more than the amount that had initially been used to calculate their TPP payments.

50. After verifying Ingham and Murphy's income, BAC subjected their loan to a Net Present Value ("NPV") test. The NPV test produced a negative result. In order to reduce Murphy and Ingham's monthly loan payments to 31% of their income, BAC would have had to forbear $74,806.81, or 36%, of their unpaid loan balance of $209,906.30.

51. BAC notified Ingham and Murphy of their ineligibility for HAMP on May 7, 2010. A true and correct copy of the May 7, 2010 letter is attached hereto as Exhibit Q.

52. Enclosed with the May 7, 2010 letter was an offer of a permanent, non-HAMP modification to Ingham and Murphy. Ingham and Murphy did not accept that offer.

*Noel and Kimberly Ayers*

53. BAC services the mortgage loan of Noel and Kimberly Ayers. On October 6, 2009, Noel Ayers was sent a TPP. A true and correct copy of the TPP sent to the Ayers is attached hereto as Exhibit R.

54. BAC has no record of having ever received a signed TPP from the Ayers.

*[Remainder of this page intentionally left blank]*

I declare under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct this 13th day of October 2010.

Keith R. Jones

Dated:  October 15, 2010

Respectfully submitted,
BAC Home Loans Servicing, L.P.,
By its attorneys,

/s/ James W. McGarry

James W. McGarry (BBO No. 633726)
jmcgarry@goodwinprocter.com
Mark Tyler Knights (BBO No. 670991)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231

**CERTIFICATE OF SERVICE**

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on October 15, 2010.

/s/ James W. McGarry